OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 In
 
 North Carolina v Alford
 
 (400 US 25), the United States Supreme Court recognized that an accused may voluntarily enter a guilty plea without admitting culpability when there is strong record evidence of actual guilt. In the case now before us, petitioner was convicted, by way of an
 
 Alford
 
 plea, of first degree manslaughter for bludgeoning his wife to death with a barbell, and was sentenced to a prison term of five-to-fifteen years. This appeal asks whether it was irrational for the Parole Board to deny petitioner parole, after five years’ imprison
 
 *473
 
 ment, on the grounds that he “lack[ed] remorse and insight” and accepted no responsibility for the “actions that resulted in the brutal homicide” of his wife.
 

 As recounted by petitioner at a Parole Board hearing, he and his wife had argued at home, on the night before the killing, about his alleged involvement with another woman. Although his wife called 911, they resolved their differences before going to sleep. Petitioner told the Board that he went to work the next morning and later telephoned his wife at her job, but she had not arrived. When, at 11 a.m., his wife still had not reported for work, petitioner returned home and found her body on the floor, the apartment ransacked. Petitioner called the police. In response to questions by the Board, petitioner denied the prosecution theory that his wife was about to leave him. He conceded that she had purchased a plane ticket, but claimed that the trip was a planned visit to her sister. Petitioner denied that his wife had been having an affair, and adamantly denied that he had killed her.
 

 During the hearing, a Parole Board Commissioner informed petitioner that the Board would review his records thoroughly, including any documents he wished to submit. He furnished a letter from trial counsel stating that petitioner had maintained his innocence but faced the admission of evidence at trial that could have been dispositive of guilt and that, due to the nature of this evidence, there was a strong likelihood that a jury would convict him. (The plea minutes themselves were not placed before the Board.) Trial counsel’s letter further indicated that petitioner had “the opportunity pursuant to a plea negotiation to enter a plea of guilty to a lesser charge with a sentence commitment of five (5) to fifteen (15) years.”
 

 Petitioner himself told the Parole Board that he had initially been offered two to six years, but turned it down because he did not kill his wife and would not admit to it. Petitioner also told the Board that, while in prison, he was involved in educational and vocational programs, taught classes in accounting, investment and business administration, and collaborated on articles about prison issues with a college professor friend. The Board acknowledged that petitioner had a certificate of earned eligibility, a good institutional record and no disciplinary problems.
 

 Petitioner admitted that he formerly used marijuana, hashish and cocaine, when he was “hanging out” for “happy hour after work” with his wife and their friends. Petitioner’s inmate
 
 *474
 
 status report, prepared by the Division of Parole for the Parole Board appearance, indicated that petitioner required domestic violence treatment, as well as a drug therapy program, periodic urinalysis, abstention from alcohol and a possible curfew. Petitioner also acknowledged that, at the time of the plea, his mother-in-law’s wrongful death suit was pending against him, and was later settled when he surrendered his assets to her.
 

 The Board denied parole. The stated grounds were that petitioner was convicted of a very serious crime indicating a propensity for extreme violence and indifference to the rights of others, that he did not accept responsibility for his actions, and that he lacked remorse and insight into the crime. Following an unsuccessful administrative appeal, petitioner commenced the instant CPLR article 78 proceeding. Supreme Court granted the petition and vacated the Board’s determination, reasoning that if the prosecution and the court accepted his plea of guilty without any admission of culpability, a parole determination based upon lack of remorse is arbitrary and capricious. The Appellate Division, one Justice dissenting, reversed and held that it was not an abuse of discretion to consider petitioner’s lack of remorse and insight into the crime (266 AD2d 296, 297). The dissent maintained that the State had “expressly waived” its ability to require petitioner to display remorse by accepting the
 
 Alford
 
 plea
 
 (id.,
 
 at 300 [Friedmann, J., dissenting]). We now affirm.
 

 Discussion
 

 A single issue is before us: is it irrational for the Parole Board to deny petitioner parole based on his refusal to accept responsibility for the crime after a court allowed him to enter a plea without admitting his culpability? There is no contention that petitioner’s plea was anything less than fully knowing and voluntary, and founded on strong evidence of actual guilt.
 

 Alford
 
 pleas are — and should be — rare.
 
 [1]
 
 Indeed, in some jurisdictions they are not permitted at all
 
 (see, e.g., State v Da
 
 
 *475
 

 vis,
 
 116 NJ 341, 371, 561 A2d 1082, 1097 [a guilty plea cannot be accepted unless the defendant acknowledges guilt];
 
 Ross v State,
 
 456 NE2d 420, 423 [Ind] [same];
 
 see also,
 
 Steven E. Walburn,
 
 Should the Military Adopt an Alford-Type Guilty Plea?,
 
 44 Air Force L Rev 119, 120 [noting that
 
 Alford
 
 pleas are not recognized in military justice system]).
 

 In New York, such a plea is allowed only when, as in
 
 Alford
 
 itself, it is the product of a voluntary and rational choice, and the record before the court contains strong evidence of actual guilt
 
 (see, e.g., People v Miller,
 
 91 NY2d 372, 377;
 
 People v Francabandera,
 
 33 NY2d 429, 438 [a defendant suffering amnesia could not honestly confess guilt, but could voluntarily plead to a lesser charge in the face of overwhelming evidence of his culpability];
 
 see also, People v Friedman,
 
 39 NY2d 463, 466 [upholding plea lacking an admission that defendant committed the criminal act as falling “squarely within the type of plea sanctioned in
 
 North Carolina v Alford”]).
 

 While
 
 Alford
 
 pleas are rare, from the State’s perspective they are no different from other guilty pleas; it would otherwise be unconscionable for a court to sentence an individual to a term of imprisonment. In fact, this Court has recognized that an
 
 Alford
 
 plea may generally be used for the same purposes as any other conviction
 
 (People v Miller, supra,
 
 91 NY2d, at 378 [allowing cross-examination of a defendant for impeachment purposes about previous conviction resulting from
 
 Alford
 
 plea]). Like any other guilty plea, it may be used as a predicate for civil and criminal penalties
 
 (see, Matter of Hopfl,
 
 48 NY2d 859, 860 [felony conviction pursuant to an
 
 Alford
 
 plea may serve as basis for attorney’s disbarment];
 
 see also, People v Geier,
 
 144 AD2d 1015, 1016 [conviction based on an
 
 Alford
 
 plea may be used in determining predicate felon status for sentencing];
 
 People v J. G.,
 
 171 Misc 2d 440, 446, 453 [defendant who was convicted of third degree rape by way of
 
 Alford
 
 plea is subject to consequences of classification under the Sex Offender Registration Act and submitting to HIV test]). An
 
 Alford
 
 plea may also foreclose opportunities for relief on appeal
 
 (see, People v Green,
 
 75 NY2d 902, 904-905 [after taking an
 
 Alford
 
 plea, a defendant forfeited his right to challenge a claimed
 
 Batson
 
 violation]).
 

 Petitioner’s argument hinges on the assumption that acceptance of an
 
 Alford
 
 plea implies a promise by the State that an inmate will never have to acknowledge responsibility for the crime. The court’s acceptance of his plea without an admission of culpability was not an indication that the State viewed him
 
 *476
 
 as innocent. On the contrary, petitioner’s plea resulted in a conviction of guilt based on strong record evidence that he actually committed the crime charged. The State considered petitioner guilty of the crime. Nor was there' any promise that petitioner would be treated as “innocent” by the Parole Board. Indeed, there could not be, because under our system a court may initially set a minimum period of incarceration, but the Parole Board makes the ultimate determination whether to release an inmate
 
 (Matter of Russo v New York State Bd. of Parole,
 
 50 NY2d 69, 77). Petitioner received the benefit of his negotiated plea when he was not required to admit to the specific facts of the crime before the court.
 
 [2]
 

 Our jurisprudence also is well settled as to the authority of the Parole Board. Judicial intervention is warranted only when there is a “showing of irrationality bordering on impropriety” (see,
 
 Matter of Russo, supra,
 
 50 NY2d, at 77;
 
 Matter of Briguglio v New York State Bd. of Parole,
 
 24 NY2d 21, 29). Thus, we review whether the Board’s decision to deny parole was arbitrary or capricious.
 

 In New York, the Parole Board holds the power to decide whether to release a sentenced prisoner on parole. The Board follows the legislative mandate of ensuring that the prospective parolee “will live and remain at liberty without violating the law, and that his [or her] release is not incompatible with the welfare of society and will not so deprecate the seriousness of [the] crime as to undermine respect for law” (Executive Law § 259-i [2] [c] [A]). Moreover, “[discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined”
 
 (id.).
 
 Rather, when, as here, the sentence has been set by the court, the Board must consider the seriousness of the offense (with consideration of the sentence, the pre-sentence report, mitigating and aggravating factors, and activities after arrest and prior to confinement) and the inmate’s prior criminal record (Executive Law § 259-i [1] [a]; [2] [c] [A]).
 

 In every case, the Board must additionally consider the inmate’s institutional record (vocational education, training or work assignments, therapy), performance in any temporary
 
 *477
 
 release program, release plans, any deportation order issued by the Federal Government, and any statement to the Board by victims or their representative (Executive Law § 259-i [2] [c] [A]). While consideration of these guidelines is mandatory, the ultimate decision to parole a prisoner is discretionary
 
 (Tarter v State of New York,
 
 68 NY2d 511, 517-518 [noting that the functions of the Board, in fitting the inmate’s factual circumstances within the guidelines and using discretion to dispose of the matter, are classically judicial tasks];
 
 see also, Matter of King v New York State Div. of Parole,
 
 83 NY2d 788, 791 [the Board must provide an inmate with a proper hearing in which only the relevant guidelines are considered]).
 

 We conclude that it was neither arbitrary nor capricious for the Board to consider remorse and insight into the offense following petitioner’s
 
 Alford
 
 plea. These factors, we recognize, are not enumerated in the statute. However, the Board is empowered to deny parole where it concludes that release is incompatible with the welfare of society. Thus, there is a strong rehabilitative component in the statute that may be given effect by considering remorse and insight
 
 (see, e.g., Matter of Dudley v Brown,
 
 227 AD2d 863 [lack of remorse and prior mental illness history appropriate when taken together because they relate directly to statutory standards];
 
 Matter of Bockeno v New York State Parole Bd.,
 
 227 AD2d 751 [appropriate to consider lack of remorse, nature of crime, failure to participate in sex offender counseling and vulnerability of victims];
 
 Matter of Walker v New York State Div. of Parole,
 
 203 AD2d 757 [lack of remorse properly considered with seriousness of crime and failure to attend violent behavior modification programs]). Additionally, once an individual has been convicted of a crime, it is generally not the Board’s role to reevaluate a claim of innocence, either by someone who maintains innocence in the face of a guilty verdict, or by someone who allocutes to the facts but later claims to be innocent.
 

 At petitioner’s parole hearing, the Board was required to assess whether he presented a danger to the community, or whether there was a reasonable probability that he could live at liberty without repeating his offense. Petitioner’s inmate status report indicated the necessity of domestic violence treatment. The factors of remorse and insight were especially relevant because petitioner was a productive citizen and model prisoner who enthusiastically engaged in educational and vocational programs, taught other prisoners and wrote about prison life, and who nevertheless, in the eyes of the law,
 
 *478
 
 brutally killed his wife. Since discretionary release may not be granted merely as a reward for exemplary conduct, the Board evaluated petitioner’s rehabilitative progress to determine if he still posed a danger, and in that connection properly considered remorse and insight into the criminal act.
 
 [3]
 

 We conclude that petitioner’s personal refusal to admit the specific facts of the crime at the time of the
 
 Alford
 
 plea did not constrain the Parole Board’s ensuing responsibility to confirm, within a reasonable probability, that petitioner is ready to rejoin the community. This is so for a convicted defendant who maintains innocence at and after trial, for a defendant who allocutes to the facts but later declares his innocence, and it is also the case here. Petitioner’s remaining contention is without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, without costs.
 

 [1]
 

 .
 
 Alford
 
 stands at the outer reaches of our settled doctrine that if a defendant’s recitation of the facts negates an essential element of the crime, raising substantial doubt as to guilt, the trial court must inquire further to ensure that defendant’s guilty plea is both knowing and voluntary
 
 (People v Lopez,
 
 71 NY2d 662, 666;
 
 People v Beasley,
 
 25 NY2d 483, 487-488). Upon further inquiry, the court may accept the plea only if it determines the allocution sufficient
 
 (People v Lopez, supra,
 
 71 NY2d, at 666). Even absent a recitation as to every essential element, the court may still accept the plea — now an
 
 Alford
 
 plea
 
 (People v Francis,
 
 38 NY2d 150, 153, citing
 
 People v Serrano,
 
 15 NY2d 304).
 

 [2]
 

 . There is no allegation that the court failed to advise petitioner of the direct consequences of his plea (see,
 
 People v Latham,
 
 90 NY2d 795, 798, citing
 
 People v Ford,
 
 86 NY2d 397, 403). A court accepting an
 
 Alford
 
 plea could, if it wished, additionally advise a defendant that collateral consequences might later result from a refusal to admit guilt — as, for example, in connection with parole.
 

 [3]
 

 . Other states that have considered
 
 Alford
 
 pleas in the context of parole and probation have reached a like result (see,
 
 Cable v Warden, N. H. State Prison,
 
 140 NH 395, 396-398, 666 A2d 967, 968-969 [notwithstanding
 
 Alford
 
 plea, parole board could deny parole for failure to complete sex offender program];
 
 State ex rel. Warren v Schwarz,
 
 219 Wis 2d 615, 642-644, 579 NW2d 698, 711 [no promise that petitioner could maintain innocence for purposes other than
 
 Alford
 
 plea, so that probation revocation based on failure to admit guilt was proper];
 
 contra, State v Birchler,
 
 2000 WL 1473152, 2000 Ohio App LEXIS 4622 [Ohio App] [probationer who took
 
 Alford
 
 plea did not have notice that he would be required to admit sex offense]).