Russell MANLEY, Plaintiff,

v.

Gail THOMAS, Acting Superintendent, Mid–Orange Correctional Facility and Brion Travis, Chairman, New York Division of Parole Defendants.

No. 02 Civ. 9754(VM).

United States District Court, S.D. New York.

April 1, 2003.

Russell Manley, Warwick, NY, pro se.

Beth Janet Thomas, Assist. Atty. Gen., New York City, for respondents.

### DECISION AND AMENDED ORDER

MARRERO, District Judge.

Petitioner Russell Manley ("Manley"), acting *pro se*, filed this action against defendants Gail Thomas, Acting Superintendent of New York State's Mid–Orange Correctional Facility ("Mid–Orange"), and Brion Travis, Chairman of the New York Division of Parole (collectively "Defendants" or the "State"). Manley seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging violation of his federal rights to due process and equal protection of the law arising from the State's denial of his application for parole. In connection with his petition, Manley also filed motions seeking discovery and to be released on bail pending review of his habeas application. By Order dated March 31, 2003 the Court denied Manley's petition and associated motions and indicated that the Court's findings, reasoning and conclusions would be set forth separately in a Decision and Amended Order to be made available to the parties. Accordingly, for the reasons discussed below, Manley's petition and related motions are DENIED.[1]

---

1. In a previous Order herein dated January 24, 2003 [doc. no. 5], the Court had scheduled

## I. *FACTS*

Manley was convicted on August 1, 1985 in New York State Supreme Court, New York County, of second degree murder, for which he was sentenced to eighteen years to life. The crime for which he was found guilty entailed an incident in which Manley shot a fellow drug dealer in the back in connection with a narcotics-related debt. He is incarcerated at Mid–Orange pursuant to the judgment imposing that sentence. Prior to this conviction, Manley had an extensive criminal history spanning over twenty years, including weapons charges, armed robbery and assault arising from a shooting.

Manley's first application for parole was heard by the Parole Board on March 20, 2002 and denied. On administrative appeal, that decision was affirmed in November 2002. Manley did not proceed under Article 78 of the New York State Civil Practice Law and Rules ("CPLR") to further challenge the denial of his parole application and acknowledges that he has not exhausted state remedies. Instead, contending that state procedures available to inmates challenging parole are ineffective and futile to protect federal constitutional rights, he filed the petition now before this Court asserting that the Parole Board's decision was arbitrary and capricious. Manley claims that he has satisfied all of the goals and conditions established by the State's Department of Corrections ("DOCS") as prerequisites for parole; and that the denial of his petition must have been based on the inappropriate consideration that he has not served enough time, in furtherance of the State's policy to eliminate parole for violent felony offenders. Manley thus contends that the Parol Board's determination in his case was arbitrarily motivated by political pressure and public opinion rather than the weight of the evidence favoring his release. Manley also raises an equal protection claim, alleging that several other inmates convicted of murder and similarly situated in all material respects with extensive criminal records had been paroled.

■ The State first argues that Manley's petition should be denied because his due process and equal protection claims are unexhausted. Manley responds that the exhaustion requirement does not apply where the state remedy available to raise a particular claim is "ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(ii). He points out that under New York law the only avenue available to inmates of state facilities to challenge a denial of parole is a mandamus proceeding pursuant to CPLR Article 78, but that under state precedent, typically such proceedings are dismissed before most petitioners are able to obtain a final judgment on the merits and that, even if he did obtain such an adjudication, the available judicial remedy is a new hearing before the Parole Board. Manley thus characterizes the state remedy as ineffective and futile. (Petitioner's Memorandum of Law In Support of Motion for Writ of Habeas Corpus dated November 15, 2002, at 2–3.)

The Court notes that Manley's petition is one of numerous other habeas corpus petitions recently filed in this Court by Mid–Orange inmates raising similar if not identical claims and arguments. In three of these cases, prior decisions of this Court addressed and rejected aspects of those petitioners' arguments on the merits without ruling on the exhaustion issue. *See,*

---

further briefing of Manley's petition. However, upon further consideration of the petition and accompanying record and the state's objections, the Court finds sufficient cause to vacate its January 24, 2003 Order and, concluding that there is no merit to Manley's claims, to deny the petition.

*e.g., Brown v. Thomas,* No. 02 Civ. 9257, 2003 WL 941940 (S.D.N.Y. March 10, 2003); *Defino v. Thomas,* No. 02 Civ. 7413, 2003 WL 40502 (S.D.N.Y. Jan.2, 2003); *Lowery v. Thomas,* No. 03 Civ. 0362, slip op. (S.D.N.Y. March 20, 2003) (*sua sponte* dismissing the habeas petition in reliance on *Brown* ).

The Court finds the analysis and conclusions in *Brown* and *Defino* persuasive insofar as they address legal issues common to Manley's petition. Guided by the approach adopted in those cases, this Court declines to rule on Manley's exhaustion argument because the Court finds no merit in the claims presented in his petition.

## A. DUE PROCESS

Manley argues that the Due Process Clause affords him an inherent liberty interest to be free of institutional restraint; that this right gives him a constitutionally protected interest in parole release; and that he was deprived of this liberty interest when the State denied him parole. Manley also argues that parole is a state-created personal right that qualifies as a federally-protected liberty interest. As grounds for his claim, Manley asserts that the Parole Board was presented with no evidence on the record to support its decision; that the Parole Board's decision was arbitrary and capricious by not articulating any specific reason for denying him parole, other than its finding that Manley's release would be inappropriate; that nonetheless the Parole Board's conclusion is contrary to the record in that he had satisfied all the rehabilitative goals DOCS had established for him; and that the Parole Board's decision was infected by political and public opinion pressures to deny violent felony offenders parole. The Court finds these arguments meritless.

■ The Supreme Court has held that a convicted inmate has no inherent or constitutional right to be released on parole

prior to the expiration of a valid sentence. *See Greenholtz v. Inmates of the Neb. Penal and Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). In determining when a statutorily-created liberty interest in parole exists, the Second Circuit has noted that the state parole system in New York "is not one that creates in any prisoner a legitimate expectancy of release." *Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001); *see also Marvin v. Goord,* 255 F.3d 40, 44 (2d Cir.2001); *Boothe v. Hammock,* 605 F.2d 661, 663 (2d Cir.1979). Thus, insofar as any inmate incarcerated in a New York State facility has any liberty interest in parole, that interest extends only to not being denied a petition arbitrarily or capriciously, based on inappropriate consideration of a protected classification or an irrational distinction, or by reason of any other constitutionally unlawful grounds. *See Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *see also Silmon v. Travis,* 95 N.Y.2d 470, 718 N.Y.S.2d 704, 741 N.E.2d 501, 504 (2000) (noting that in connection with the Parole Board's authority "[j]udicial intervention is warranted only when there is a 'showing of irrationality bordering on impropriety.'" (quoting *Russo v. New York State Bd. of Parole,* 50 N.Y.2d 69, 427 N.Y.S.2d 982, 405 N.E.2d 225, 229 (1980))).

■ Accordingly, a denial of parole may be justified on the basis of reasonable considerations defined by statute, including the inmate's criminal history and seriousness of the offense for which he is in custody. *See Silmon,* 718 N.Y.S.2d 704, 741 N.E.2d at 505 ("[T]he Board is empowered to deny parole where it concludes that release is incompatible with the welfare of society."); *Garcia v. N.Y.S. Div. of Parole,* 239 A.D.2d 235, 657 N.Y.S.2d 415, 418 (App. Div. 1st Dep't 1997).

The factors the Parole board may weigh in considering an inmate's application for parole are defined in the New York Executive Law. The statute specifies that:

> Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.

N.Y. Exec. L. § 259–i(2)(c)(A). In addition, where an inmate's minimum sentence is imposed by the court, the Parole Board must also consider

> the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court ... [and the inmate's] prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

N.Y. Exec. L. § 259–i(1)(A); *see Silmon*, 718 N.Y.S.2d 704, 741 N.E.2d at 505. The Parole Board has discretion to accord these considerations whatever weight it deems appropriate, and need not expressly discuss each of the reasons in its determination. *See Garcia*, 657 N.Y.S.2d at 418 (citing *King v. New York State Div. of Parole*, 83 N.Y.2d 788, 610 N.Y.S.2d 954, 632 N.E.2d 1277 (1994)).

Here, the record indicates that the Parole Board considered the seriousness of the crime for which Manley is currently in custody and his extensive criminal history extending over twenty years that included prior convictions for weapons possession and robbery. Contrary to Manley's contention, the Parole Board acknowledged his participation in rehabilitation programs. Even if, as Manley asserts, he fully complied with all rehabilitation goals set for him, and even if he was denied parole primarily because of the violent felony for which he was convicted, "the Board was fully entitled to determine that the nature of the crime outweighed the positive aspects of his record." *Brown*, 2003 WL 941940, at *2 (citing *Defino*, 2003 WL 40502, at *4); *see also Silmon*, 718 N.Y.S.2d 704, 741 N.E.2d at 505 ("[T]he Board was required to assess whether [the petitioner] presented a danger to the community, or whether there was a reasonable probability that he could live at liberty without repeating his offense."). And although Manley asserts conclusorily that political pressure and public opinion tainted the Parole Board's decision, he presents no factual evidence whatever pointing to anything in the record supporting his allegation. Accordingly, Manley's habeas corpus petition grounded on denial of due process must be denied.

## B. *EQUAL PROTECTION*

The Court finds Manley's equal protection claim equally meritless. Manley asserts that when he was denied parole, the same Parole Board on the same day granted parole to several other inmates convicted of manslaughter, and that the State has articulated no rational or legitimate reason for treating him differently from other similarly situated inmates. Manley cites no evidence that the denial of his application was grounded on any suspect classification or that he was otherwise the victim of unlawful disparate treatment. As the *Brown* court observed:

> [T]he number and variety of factors bearing on the seriousness of the underlying offense and the likelihood that an offender will be a danger to the community make it impossible to conclude, on the bases of the sketchy data presented,

that petitioner has been singled out from among all homicide offenders for disparate treatment. 2003 WL 941940, at *2. Nor could Manley establish on this record that he qualifies as a "class of one" as the victim of arbitrary or invidious distinction from other inmates similarly situated. There is no evidence here that he was "subjected to 'irrational and wholly arbitrary acts' and 'intentional disparate treatment.'" *Id.* (quoting *Giordano v. City of New York,* 274 F.3d 740, 751 (2d Cir.2001)). Accordingly, Manley's habeas corpus petition grounded on equal protection must be denied.

## II. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the Court's Order dated March 31, 2003 is amended to incorporate the discussion set forth above; and it is further

**ORDERED** that on its own motion the Court's Scheduling Order dated January 24, 2003 [doc. no. 5] is vacated; and it is further

**ORDERED** that Russell Manley's petition for a writ of habeas corpus is denied; and it is finally

**ORDERED** that the petitioner's motions seeking discovery and release on bail are denied.

The Clerk of Court is directed to close this case.

As the petitioner has made no substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000).

**SO ORDERED.**