[946 NE2d 169, 921 NYS2d 181]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HADJI S. HILL, Appellant.

Argued February 10, 2011; decided March 29, 2011

## APPEARANCES OF COUNSEL

*Timothy P. Donaher, Public Defender*, Rochester (*Janet C. Somes* of counsel), for appellant.

*Michael C. Green, District Attorney*, Rochester (*Leslie E. Swift* of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be reversed, defendant's plea vacated, and the case remitted to County Court for further proceedings on the indictment.

On November 19, 2005, defendant Hadji Hill pulled a switchblade knife from his pocket and stabbed his uncle in the chest, killing him. This incident took place in defendant's apartment. Defendant was arrested and charged with second-degree intentional murder (Penal Law § 125.25 [1]). On the day a jury trial was scheduled to commence, the trial judge was informed that defendant was prepared to plead guilty to first-degree manslaughter (Penal Law § 125.20), with a promised sentence of 15 years of imprisonment and five years of postrelease supervision. During the plea allocution, however, defendant insisted that he did not intend to kill or harm his uncle. The courtroom was evidently packed with defendant's relatives, including his uncle's family, at the time. The judge then conducted a further inquiry to elicit from defendant a recital of the circumstances and details of the crime.

During the ensuing colloquy, defendant told the judge that he had gotten into an argument and "struggle" with his uncle; he claimed that he "put the knife out just to keep [his uncle] back, but at that same time [his uncle] was coming back into [him] and [the knife] stuck [his uncle]." In response to the judge's statement that he would "have to admit that [he] intended to cause serious physical injury by using a switchblade knife," defendant conceded he knew that contact with a switchblade "could have caused damage"; and he acknowledged that the medical evidence would show that the knife penetrated his uncle's body through several layers of muscle and tissue, broke a rib bone and pierced his heart, creating a two-inch laceration that caused his uncle to bleed to death. The judge asked defendant if he understood that "considering the nature and extent of the injury that ultimately caused the death and the penetration of the wound, that the jury [was] likely to conclude there was an intent to cause death, if not serious physical injury," and he responded "Yes." The judge then stated, "And so you're giving up your right to raise any defenses . . . and accepting that evidence and . . . this plea because of that?" Defendant again answered "Yes," and pleaded guilty to first-degree manslaughter. The judge accepted his plea.

While awaiting sentence, defendant sent a letter to the judge, asking to withdraw his plea. He argued that his attorney "led [him] to believe that it was in [his] family's best interest that [he] cop out to 15 years in prison, which turned out to be untrue according to [his] family." In addition, defendant's mother wrote to the judge, complaining that her son's attorney had "tricked" him into taking the plea. The uncle's widow also wrote, explaining the traumatic effect of her husband's death on his family, and stating that while she chose to forgive her nephew, he deserved the maximum sentence for his crime.

At sentencing, the judge asked defendant if there was anything he wanted to add to the statements in his letter. Defendant replied, "No. I mean, I should do some time for my uncle. It wasn't intentional. Sentence just seemed excessive, that's all"; and later that he "didn't intend to kill [his] uncle," who was his "best friend," and that he "didn't intend to cause any harm to [his] uncle," but rather "pulled the knife out just to merely keep him away . . . from coming back and attacking . . . again." The judge denied defendant's motion to withdraw his plea, and imposed the bargained-for sentence.

Defendant appealed, arguing that his plea was not knowing, voluntary and intelligent. The Appellate Division concluded

that the plea was valid because the trial judge made the requisite further inquiry to make sure there was no justification defense and conducted what was essentially "a limited *Alford* colloquy with respect to the intent element, thus rendering unnecessary an admission of intent by defendant" (66 AD3d 1471, 1472 [4th Dept 2009]; *see North Carolina v Alford*, 400 US 25 [1970]). We disagree.

At the plea proceeding, defendant denied that he intended to cause serious physical injury to his uncle, thus negating the intent element of first-degree manslaughter. This deficiency was not cured by the judge's further inquiry. "Even absent a recitation as to every essential element, the court may still accept the plea—now an *Alford* plea" (*Matter of Silmon v Travis*, 95 NY2d 470, 474 n 1 [2000]); however, "*Alford* pleas are—and should be—rare" (*id.* at 474), and are "allowed only when, as in *Alford* itself, [they are] the product of a voluntary and rational choice, and the record before the court contains strong evidence of actual guilt" (*id.* at 475). Accordingly, there is no such thing as a "limited" *Alford* colloquy or plea. While the medical evidence in this case provided strong proof of defendant's actual guilt, the record does not establish that he was aware of the nature and character of an *Alford* plea. He was not, for example, asked if he wished to plead guilty to first-degree manslaughter to avoid the risk of conviction upon a trial of the more serious crime of second-degree murder (*see People v Serrano*, 15 NY2d 304, 310 [1965]). It is not enough that defendant made concessions from which such a choice might be inferred, especially since the colloquy shows that he may have thought that his knowledge that the switchblade knife "could have caused damage" was an admission of guilt. On these facts, we therefore cannot say that defendant's guilty plea was "the product of a voluntary and rational choice" (*Silmon*, 95 NY2d at 475).

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur in memorandum.

Order reversed, etc.