*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  April 28, 2016                    521536
_____

In the Matter of DEMPSEY
    HAWKINS,
                    Respondent,

        v
                                              OPINION AND ORDER
NEW YORK STATE DEPARTMENT OF
    CORRECTIONS AND COMMUNITY
    SUPERVISION et al.,
                    Appellants.
_____

Calendar Date:  February 17, 2016

Before:  McCarthy, J.P., Egan Jr., Rose and Lynch, JJ.;
         Garry, J., vouched in.

                    _____


        Eric T. Schneiderman, Attorney General, Albany (Laura
Etlinger of counsel), for appellants.

        Issa Kohler-Hausmann, New York City, for respondent.

        New York Civil Liberties Union, New York City (Philip
Desgranges of counsel), and The Legal Aid Society, New York City
(Cynthia Conti-Cook of counsel), amici curiae.

                    _____


McCarthy, J.P.

        Appeal from a judgment of the Supreme Court (LaBuda, J.),
entered May 14, 2015 in Sullivan County, which granted
petitioner's application, in a proceeding pursuant to CPLR
article 78 to, among other things, annul a determination of
respondent Board of Parole denying petitioner's request for
parole release.

When petitioner was 16 years old, he strangled to death his 14-year-old girlfriend and then hid her body.  Thereafter, petitioner actively lied about his responsibility for the crime for several months.  Approximately two years after the crime, the victim's body was discovered.  Petitioner was eventually arrested and then tried and convicted of murder in the second degree.  He was thereafter sentenced, in 1979, to a prison term of 22 years to life.

Petitioner has been denied parole release nine times since becoming eligible for it in 2000.  At the time of his March 2014 parole release hearing, at issue on this appeal, petitioner was 54 years old and had served 36 years of his sentence.  Respondent Board of Parole denied petitioner's request for parole release upon the conclusion that, among other things, granting his release "would so deprecate the seriousness of [his] offense as to undermine respect for the law" and imposed a 24-month hold to be followed by another appearance.  When the Board's Appeals Unit failed to rule on petitioner's administrative appeal within four months (see 9 NYCRR 8006.4 [c]), petitioner commenced this proceeding challenging the Board's determination, requesting either his immediate release or a de novo parole release hearing.  Supreme Court, among other things, annulled the determination, remanded for a de novo parole release hearing and precluded one of the Board's commissioners from participating in any future parole proceedings involving petitioner.[1]

We agree with petitioner that, as a person serving a sentence for a crime committed as a juvenile, petitioner has a substantive constitutional right not to be punished with a life sentence if the crime reflects transient immaturity and that petitioner was denied his constitutional right to a meaningful opportunity for release when the Board failed to consider the significance of petitioner's youth and its attendant circumstances at the time of the commission of the crime.  The

_____

[1]  Contrary to petitioner's argument, Supreme Court's decision and order constituted an appealable final judgment (see Matter of Duffy v New York State Dept. of Corr. & Community Supervision, 132 AD3d 1207, 1208 n [2015]).

Board, as the entity charged with determining whether petitioner will serve a life sentence, was required to consider the significance of petitioner's youth and its attendant circumstances at the time of the commission of the crime before making a parole determination.  That consideration is the minimal procedural requirement necessary to ensure the substantive Eighth Amendment protections set forth in Graham v Florida (560 US 48 [2010]), Miller v Alabama (___ US ___, 132 S Ct 2455 [2012]) and Montgomery v Louisiana (___ US ___, 136 S Ct 718 [2016]).

For the purposes of sentencing, "children are constitutionally different from adults" (Montgomery v Louisiana, 136 S Ct at 733 [internal quotation marks and citation omitted]; see Miller v Alabama, 132 S Ct at 2458).  This difference stems from three primary distinctions:

> "First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. Second, children are more vulnerable to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings.  And third, a child's character is not as well formed as an adult's; his [or her] traits are less fixed and his [or her] actions less likely to be evidence of irretrievable depravity" (Montgomery v Louisiana, 136 S Ct at 733 [internal quotation marks and citations omitted]; see Miller v Alabama, 132 S Ct at 2464; Roper v Simmons, 543 US 551, 569-570 [2005]).

For these reasons, primarily, "the case for retribution is not as strong with a minor as with an adult" and "[t]he need for incapacitation is lessened, too, because ordinary adolescent development diminishes the likelihood that a juvenile offender

forever will be a danger to society" (Montgomery v Louisiana, 136 S Ct at 733 [internal quotation marks and citations omitted]; see Miller v Alabama, 132 S Ct at 2465; Graham v Florida, 560 US at 71-72). Consistent with these conclusions, the Supreme Court of the United States held in Miller v Alabama (supra) that mandatory sentences of life without the possibility of parole for juvenile homicide offenders violate the Eighth Amendment's prohibition on cruel and unusual punishment (id. at 2460). As that Court has since clarified, a substantive rule announced in Miller is "that life without parole is an excessive sentence for children whose crimes reflect transient immaturity" (Montgomery v Louisiana, 136 S Ct at 735). The Court considered this guarantee in the context of the sentencing stage, and it found that the "procedural requirement necessary to implement [this] substantive guarantee" is "a hearing where youth and its attendant characteristics are considered" for the purpose of "separat[ing] those juveniles who may be sentenced to life without parole from those who may not" (id. at 734-735 [internal quotation marks and citation omitted]; see Miller v Alabama, 132 S Ct at 2471).

In addressing whether a juvenile's sentence must include the possibility of parole, the Court has given some guidance as to the promise that a parole determination represents. The Court has clarified that the relevant distinction between a constitutional and unconstitutional life sentence for a juvenile homicide offender — for all but the rare case of an irreparably corrupt juvenile — is that a constitutional sentence guarantees, at some point, a "meaningful opportunity to obtain release" (Graham v Florida, 560 US at 75; see Montgomery v Louisiana, 136 S Ct at 736).[2] As the Court further made clear, it did not see its role, upon reaching this conclusion, to prescribe a

_____

[2] Contrary to the dissent's suggestion, we do not contend that a sentence such as petitioner's "is the functional equivalent of being sentenced to life in prison without the possibility of parole," except where, as here, the Board deprives an offender of a meaningful opportunity for release. We understand the dissent to agree that petitioner's sentence promised him a meaningful opportunity to obtain release, and thus we perceive no disagreement on that point.

particular opportunity for release that states must afford; instead, the Court found that "[i]t is for the [s]tate, in the first instance, to explore the means and mechanisms for compliance" (<u>Graham v Florida</u>, 560 US at 75). Although the Court has not specifically reviewed a case regarding a parole determination for a juvenile homicide offender, it is axiomatic that such an offender still has a substantive constitutional right not to be punished with life imprisonment for a crime "reflect[ing] transient immaturity" (<u>Montgomery v Louisiana</u>, 136 S Ct at 735). Further, the Court has made abundantly clear that the "foundational principle" of the Eight Amendment jurisprudence regarding punishment for juveniles is "that [the] imposition of a [s]tate's most severe penalties on juvenile offenders cannot proceed as though they were not children" (<u>Miller v Alabama</u>, 132 S Ct at 2466). A parole board is no more entitled to subject an offender to the penalty of life in prison in contravention of this rule than is a legislature or a sentencing court.

With this in mind, we reach petitioner's contention that he was denied a meaningful opportunity for release.[3] The Court has found that, at the sentencing stage, a defendant who committed a crime as a juvenile is procedurally entitled to a "hearing where 'youth and its attendant characteristics' are considered"[4] in

---

[3] Petitioner falls within the relevant class of persons due to the fact that he was sentenced for a crime that he committed as a juvenile and that, but for a favorable parole determination, he will spend the remainder of his life in prison. "[T]he remote possibility of [executive clemency] does not mitigate the harshness of th[is] sentence" for Eighth Amendment purposes (<u>Graham v Florida</u>, 560 US at 70).

[4] The Court did not merely require an opportunity for a defendant to argue that his or her youth mattered; "<u>Miller</u> requires <u>a sentencer to consider</u> a juvenile offender's youth and attendant characteristics" before punishing a defendant with a life in prison (<u>Montgomery v Louisiana</u>, 136 S Ct at 734 [emphasis added]). Even if the Court had not made this clear, a rule satisfied by a finding that a petitioner had an opportunity to advocate to the Board that it should consider his or her youth at

order to separate out those who can be punished by a life in prison from those who cannot (<u>Montgomery v Louisiana</u>, 136 S Ct at 735, quoting <u>Miller v Alabama</u>, 132 S Ct at 2460).  We agree with petitioner that an analogous procedural requirement is necessary at the parole release hearing stage.  For those persons convicted of crimes committed as juveniles who, but for a favorable parole determination will be punished by life in prison, the Board must consider youth and its attendant characteristics in relationship to the commission of the crime at issue (<u>see</u> <u>Hayden v Keller</u>, 2015 WL 5773634, *8-10, 2015 US Dist LEXIS 134426, *22-29 [ED NC, Sept. 25, 2015, No. 5:10-CT-3123 (BO)]; <u>Greiman v Hodges</u>, 79 F Supp 3d 933, 944 [SD Iowa 2015]).[5]

Here, neither the hearing transcript nor the Board's written determination[6] reflects that the Board met its

_____

the time of the crime would be particularly inappropriate in the parole release determination setting.  The Court of Appeals has determined that potential parolees are not entitled to an adversarial-type parole release hearing and, relatedly, concluded that they have no right to be represented by counsel at such a hearing (<u>see</u> <u>Matter of Briguglio v New York State Bd. of Parole</u>, 24 NY2d 21, 29 [1969]).  The dissent apparently confuses our conclusion here — that we will not find the Board to have considered petitioner's youth at the time of the crime based on the mere fact that petitioner argued that his youth should be considered — with a claim that petitioner need not raise factors before the Board.  As that is not a claim that we make — and the issue is irrelevant considering the fact that petitioner did raise the issue of his youth before the Board — we see no need to further address the dissent's contention in this regard.

[5]  This format is consistent with <u>Montgomery v Louisiana</u> (<u>supra</u>), which clarifies that a state "may remedy a <u>Miller</u> violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them" (<u>id.</u> at 736).

[6]  We are not persuaded by the fact that our dissenting colleagues were able to find an example in a hearing transcript

constitutional obligation to consider petitioner's youth and its attendant characteristics in relationship to the commission of the crime.[7]  The Eighth Amendment "<u>requires</u> a sentencer to consider a juvenile offender's youth and attendant characteristics" before punishing an offender with a life in prison (<u>Montgomery v Louisiana</u>, 136 S Ct at 734 [emphasis added]).  Because petitioner was entitled to a meaningful opportunity for release in which his youth, and its attendant characteristics, were considered by the Board, we agree with Supreme Court that petitioner is entitled to a de novo parole release hearing.

---

from 2000 – eight parole hearings before the one that is actually at issue – that evinces that at least one then-Board member considered petitioner's development at the time of the crime in reaching a parole determination that took place 14 years prior to this determination.

[7]  The one incidental remark by a commissioner indicating that petitioner must have been particularly "cold and callous" for someone his age due to the fact that he did not confess to the authorities after the commission of his crime does not alter this conclusion.  The Eighth Amendment required inquiry into and careful consideration of whether the "crime reflects transient immaturity" (<u>Montgomery v Louisiana</u>, 136 S Ct at 735).  Whether a juvenile confessed to his or her crime is not relevant to that inquiry.  Moreover, the Court has made clear that the aspect of youth that is relevant is "how children are different [from adults], and how these differences counsel against" treating them as though they were the same as adults (<u>id.</u> at 733 [internal quotation marks and citations omitted]).  The commissioner's conclusion that a child who does not confess to a crime is more morally culpable than an average child – who the commissioner apparently believed would have confessed – did not follow or constitute an inquiry regarding petitioner's maturation, or lack thereof, since the time of the crime and in relationship to becoming an adult (see <u>Hayden v Keller</u>, 2015 WL 5773634 at *3, 10, 2015 US Dist LEXIS at *6-9, 28-29 [parole scheme that only considers youth in a manner irrelevant to the Eighth Amendment fails to comply with that amendment]).

Supreme Court, however, erred here in precluding one of the Board's commissioners from participating in any future parole proceeding involving petitioner.[8] Petitioner did not request such relief, and the record provides no basis for a conclusion that the commissioner at issue is either unqualified or biased. The remaining arguments have been considered and are either academic or without merit.

Garry, J. (concurring).

We fully concur with the analysis relative to the constitutional infirmities in this record. We write separately to emphasize that review of the record as a whole reveals "irrationality bordering on impropriety," a degree of arbitrary and capricious conduct permitting judicial intervention (see Matter of Silmon v Travis, 95 NY2d 470, 476 [2000] [internal quotation marks and citations omitted]).

Although judicial review is strictly and exceptionally limited relative to the scope and degree of analysis, respondent Board of Parole is required to review and consider certain statutory factors (see Executive Law § 259-i; Matter of Dolan v New York State Bd. of Parole, 122 AD3d 1058, 1059 [2014], lv denied 24 NY3d 915 [2015]; Matter of Hamilton v New York State Div. of Parole, 119 AD3d 1268, 1269 [2014]; see also Matter of Montane v Evans, 116 AD3d 197, 204-206 [2014] [Garry, J., concurring], appeal dismissed 24 NY3d 1052 [2014]). Among these statutory factors, petitioner would be subject to immediate deportation upon release from incarceration. Documentation in the record reveals that his country of origin is fully ready to receive him, with legal and other services available, and family support awaiting. Further, petitioner has consistently

---

[8] Notably, respondents do not challenge the portion of Supreme Court's judgment dictating that the commissioners who sat on this parole proceeding not sit on petitioner's de novo hearing. As respondents inform us in their brief, the Board has an internal procedure that would dictate the same result on this issue regardless of Supreme Court's judgment.

demonstrated exemplary conduct within the prison setting.  He has a minimal disciplinary history, having not been charged with any offense of any nature since 2000; he has never been charged with an infraction involving either violence or drug use in the entire course of his incarceration, from 1979 at age 18 through his hearing at age 54.  He has an excellent history of program participation and appears to have pursued every available opportunity within the prison setting to develop himself, with respect to skills as well as insight and maturity.

Petitioner has expressed remorse for his conduct.  The record is replete with recommendations from a wide variety of individuals who are apparently fully aware of the gravity and heinous nature of petitioner's criminal conduct, but nonetheless assert, based upon their experience and observations, that petitioner has been rehabilitated during the course of his lengthy confinement.  Considering the record as a whole, together with the substantial constitutional issues discussed in the opinion of our colleague, we find that judicial intervention is required here.  We further agree that the portion of Supreme Court's determination directing the adoption of a specific future procedure by the Board must be reversed (see Matter of Hawthorne v Stanford, 135 AD3d 1036, 1041-1042 [2016]).  Accordingly, we join in the opinion modifying the judgment, without reservation.

Lynch, J., concurs.


Egan Jr., J. (concurring in part and dissenting in part).

On May 15, 1976, the victim's parents called the police to report that their 14-year-old daughter was missing.  An investigation and search immediately began and, after it was discovered that petitioner — the victim's 16-year-old former boyfriend — had been with the victim on the day that she was last seen, petitioner was questioned by the authorities.  Petitioner denied having any knowledge of the victim's whereabouts and actively participated in the search for her from May 1976 to March 1977 — perpetuating her family's hope that she was still alive and participating in what aptly has been described as a hoax, casting himself in the role of a desperate teenager

frantically searching for the girl he loved.  In reality,
however, petitioner — purportedly "distraught" over the victim's
decision to acquiesce to her parents' wishes and break up with
him — had devised a plan to lure the victim to a secluded
location whereupon he would kill the victim and then kill
himself.[1]  Petitioner partially executed that plan — strangling
the victim with a shirt and hiding her body in a 55-gallon drum,
which he then placed inside a 12-foot shaft of an abandoned
shipyard located at the tip of Staten Island.  The victim's badly
decomposed remains were not discovered until nearly two years
later.

In the interim, petitioner continued to deny any
involvement in or responsibility for the crime and, recognizing
that he "wouldn't be able to uphold the facade" that he had
created if he remained in the area, eventually left to live in
another state.  Petitioner remained out of state — attending high
school — for approximately one year, until his decision to
confide in certain friends resulted in his eventual arrest and
prosecution.  In 1979, petitioner was sentenced upon his
conviction of murder in the second degree to a prison term of 22
years to life.[2]  Since becoming eligible for parole release in

---

[1]  When asked years later why he killed the victim,
petitioner replied, "I felt that I was in love with her.  I felt
sexually obsessed.  I couldn't possibly envision someone else
with her, and I felt the only — it's foolish to say, and
ludicrous, that I felt the only way to end my pain was through
murder."  When asked why he participated in the search for the
victim, petitioner stated, "Because I was trying to maintain my
facade of innocence.  I felt if I didn't participate, I would be
looked at as a suspect, and I was doing my best to evade my act."
Petitioner further acknowledged that his participation in the
search was, at times, designed to "sabotage" the search effort
and "steer [searchers] away from where the [victim's] body was"
located.

[2]  Although petitioner allegedly admitted his crime to
certain court security officers after the jury returned its
verdict, he did not acknowledge his guilt to the victim's family

2000, petitioner has been denied release nine times based upon, among other things, the nature of the underlying crime, which has been variously – and appropriately – described as extremely serious, heinous and bizarre.  The majority now proposes to afford petitioner a de novo parole hearing, finding that he has not been afforded a "meaningful opportunity to obtain release" (Graham v Florida, 560 US 48, 75 [2010]) and, further, that the Eighth Amendment and the cases interpreting its application to juvenile offenders (see Montgomery v Louisiana, ___ US ___, 136 S Ct 718 [2016]; Miller v Alabama, ___ US ___, 132 S Ct 2455 [2012]; Graham v Florida, 560 US at 75) impose upon respondent Board of Parole a requirement that it expressly consider – in the context of petitioner's parole determination – petitioner's "youth and its attendant characteristics" in relationship to the murder that he committed nearly 40 years ago.

We agree that Supreme Court erred in precluding one of the Board's commissioners from participating in any subsequent parole hearing involving petitioner and, to that limited extent, we concur in the majority's decision.  As to the balance, however, we are satisfied that New York's sentencing and parole procedures afford petitioner a "meaningful opportunity to obtain release" (Graham v Florida, 560 US at 75), which is all that Graham, Miller, Montgomery and the Eighth Amendment itself require. Because we are of the view that no constitutional violation occurred here, we respectfully dissent and would reverse Supreme Court's judgment in its entirety and dismiss the petition.

Although the majority's decision discusses at length the characteristics that distinguish juvenile offenders from adult offenders and explores the reasons why traditional penological goals – retribution, deterrence, incapacitation and rehabilitation – do not, in all but the rarest of cases, justify imposing the most severe sentence possible upon someone who commits a crime before he or she is 18 years old, it glosses over the underlying factual differences that distinguish petitioner from the defendants in Graham, Miller and Montgomery – the most notable of which being that, unlike the defendants in those

---

until 1989 or 1990.

cases, petitioner was not actually sentenced to life in prison without the possibility of parole. In Graham, the 16-year-old defendant was sentenced to, among other things, life in prison following his conviction of armed burglary. As the state in which he was sentenced (Florida) had abolished its parole system, such defendant was — absent executive clemency — facing life in prison without any possibility of parole (Graham v Florida, 560 US at 57). The Supreme Court of the United States held that the Eighth Amendment prohibited a state from imposing a sentence of life without the possibility of parole upon a juvenile nonhomicide offender (id. at 74) — a determination grounded in the belief that a state cannot determine, at the time of sentencing, that such an offender "never will be fit to reenter society" (id. at 75). In reaching that conclusion, the Court cautioned that the Eighth Amendment does not require a state to release a juvenile offender during his or her lifetime; rather, the state need only afford the juvenile offender "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" (id.). The differences between petitioner and the defendant in Graham are readily apparent — namely, that petitioner was convicted of murder and was sentenced to a prison term of 22 years to life in a state with an active parole system. Indeed, having appeared before the Board on multiple occasions, there is no question that petitioner has been afforded an opportunity for release — the adequacy of which will be discussed infra.

The factual circumstances presented in Miller and Montgomery are equally distinguishable from the matter now before this Court. In Miller, the defendants were convicted of murder in a state where the sentencing statutes "mandated that each juvenile die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life with the possibility of parole) more appropriate" (Miller v Alabama, 132 S Ct at 2460). The requirement "that all children convicted of homicide receive lifetime incarceration without possibility of parole" (id. at 2475) and the corresponding divestiture of any discretion to impose a lesser sentence prompted the Court to conclude "that mandatory life without parole for those under the age of 18 at the time of their crimes

violates the Eighth Amendment's prohibition on cruel and unusual punishments" (id. at 2460 [emphasis added, internal quotation marks omitted]).  Again, petitioner was not sentenced to life without the possibility of parole, nor was he subject to a mandatory sentencing scheme such as the one at issue in Miller.

The Court's decision in Montgomery was even more narrowly tailored — primarily focusing upon whether Miller had announced a new rule of substantive law that, in turn, was entitled to retroactive effect, i.e., whether the holding in Miller applied to a juvenile defendant who was convicted in 1969 and, under Louisiana law, automatically received a mandatory sentence of life without the possibility of parole (Montgomery v Louisiana, 136 S Ct at 725-726).  The Court answered that inquiry in the affirmative, noting that "[a] [s]tate may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than resentencing them" (id. at 736).  While the Court indeed made clear that such offenders "must be given the opportunity to show [that] their crime did not reflect irreparable corruption," it also reiterated that "[t]hose prisoners who have shown an inability to reform will continue to serve life sentences" (id.).

Even setting aside these factual distinctions and assuming, as the majority posits, that petitioner falls within the ambit of Graham and its progeny[3] and, further, that the sentencing

---

[3]  To the extent that the majority suggests that the sentence actually imposed upon petitioner — 22 years to life — is the functional equivalent of being sentenced to life in prison without the possibility of parole, we disagree.  As noted previously, petitioner was not subject to the mandatory sentencing schemes at issue in Miller and Montgomery, and his multiple appearances before the Board belie any assertion that a determination was made, at the time of sentencing, that he "never [would] be fit to reenter society" (Graham v Florida, 560 US at 75).  More to the point, the mere fact that petitioner may well spend the rest of his life in prison is not dispositive, as nothing in Graham, Miller or Montgomery either compels the eventual release of a juvenile offender such as petitioner or —

procedures at issue in those cases and the parole determination under review here are governed by the same procedural safeguards[4] — the key principle to be extracted from Graham, Miller and Montgomery — that, in order to avoid an Eighth Amendment violation, a juvenile offender must be given "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" (Graham v Florida, 560 US at 75) — was, in our view, honored here. Executive Law § 259-i establishes a procedure for affording inmates such as petitioner discretionary release and sets forth the criteria that the Board must consider in determining whether to grant release on parole (see Executive Law § 259-i [2] [c] [A]). Among the criteria contained therein is "the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, . . . as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement" (Executive Law § 259-i [2] [c] [A]

---

in all instances — forecloses the possibility that such an offender will die in prison. Hence, there is a strong argument to be made that the holdings embodied in the cited cases do not extend to petitioner in the first instance.

[4] The majority's conclusion that petitioner's parole determination is subject to the same procedural safeguards — and must satisfy the same constitutional mandates — as those applicable to the sentencing of a juvenile offender to a prison term of life without the possibility of parole is, again, based upon a faulty premise — namely, that denying petitioner parole, after due consideration of all of the statutory factors set forth in Executive Law § 259-i — is the same as having sentenced petitioner to life in prison without the possibility of parole in the first instance. As we believe that the sentencing and parole phases of a criminal matter, as well as the interests and reasonable expectations of an offender facing life in prison with no possibility of parole versus an offender eligible for and seeking discretionary relief, are fundamentally different, we do not subscribe to the notion that the Eighth Amendment compels the Board to expressly consider petitioner's "youth and its attendant characteristics" in evaluating the propriety of his release.

[vii]).

Age at the time of the offense, together with what the Supreme Court of the United States has characterized as a juvenile's corresponding lack of maturity, sense of responsibility and insight and increased risk of impulsivity and recklessness, certainly would qualify as mitigating factors within the meaning of the statute and could properly be considered by the Board in assessing whether a particular individual should be released on parole.[5]  Indeed, a review of the transcripts of petitioner's various appearances before the Board, including his most recent hearing in March 2014, reveals that petitioner repeatedly raised — and the Board indeed was aware of and considered — petitioner's age and asserted lack of maturity at the time of the offense.[6]  As this Court has made abundantly clear, "the Board [is] not required to give each statutory factor equal weight" and, indeed, may place greater emphasis upon the serious nature of the underlying crime (Matter of King v Stanford, 137 AD3d 1396, ___, 26 NYS3d 815, 816 [2016]; see Matter of Feilzer v New York State Div. of Parole, 131 AD3d 1321, 1322 [2015]; Matter of Leung v Evans, 120 AD3d 1478, 1479 [2014], lv denied 24 NY3d 914 [2015]).  Further, while the Board must state the reasons for a denial of parole "in detail" (Executive Law § 259-i [2] [a] [i]), it need not expressly recite

---

[5]  Although the majority suggests that it is inappropriate to expect a potential parolee such as petitioner to raise such factors before the Board, we do not see this as an unduly onerous burden to impose upon someone seeking discretionary release.

[6]  For example, when petitioner appeared before the Board in 2000, one of the commissioners observed that petitioner's "insight and depth of evaluation of the whole situation was pretty weak at [the time of the offense], not very well developed."  Further, petitioner expressly raised his age and lack of maturity at his appearances before the Board in 2002, 2010 and 2014 — drawing a distinction between the "well-balanced adult" he sees himself as today and the "irrational 16 year old" he was in 1976 and insisting that he is "not an incorrigible career criminal."

each and every factor that it considered in reaching its determination, nor must it discuss such factors at length (see Matter of Duffy v New York State Dept. of Corr. & Community Supervision, 132 AD3d 1207, 1208 [2015]; Matter of Leung v Evans, 120 AD3d at 1479; Matter of Montane v Evans, 116 AD3d 197, 203 [2014], appeal dismissed 24 NY3d 1052 [2014]).  Upon reviewing the transcript of petitioner's March 2014 appearance before the Board, we are satisfied that the Board properly and adequately considered petitioner's age and asserted immaturity at the time of the offense before denying him discretionary release.  As the Board's determination does not exhibit "irrationality bordering on impropriety" (Matter of Silmon v Travis, 95 NY2d 470, 476 [2000] [internal quotation marks and citation omitted]) and, for the reasons previously discussed, does not run afoul of the Eighth Amendment, it should not be disturbed.

Rose, J., concurs.

ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as precluded a particular commissioner of respondent Board of Parole from participating in any future parole proceeding regarding petitioner, and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court