[890 NYS2d 477]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH FISHER, Appellant.

First Department, November 24, 2009

**APPEARANCES OF COUNSEL**

*Noah A. Kinigstein,* New York City, for appellant.

*Robert M. Morgenthau, District Attorney,* New York City (*Sheila O'Shea* of counsel), for respondent.

**OPINION OF THE COURT**

CATTERSON, J.

This appeal arises out of a judgment of conviction upon the defendant's plea of guilty to certain felony charges related to an incident on January 15, 2005. On appeal, the defendant claims that he should be permitted to withdraw his guilty plea and that his conviction should be vacated on the grounds, inter alia, that it was the product of undue coercion by the court.

■ Although the defendant neither sought to withdraw the plea nor moved to vacate the judgment, as a matter of discretion in the interest of justice, for the reasons set forth below, we review the claim and allow the defendant's withdrawal of his guilty plea and hereby vacate his conviction and remand to the Supreme Court for further proceedings.

The defendant was charged with burglary in the first degree, attempted rape in the first degree, four counts of sexual abuse in the first degree, and assault in the second degree. He was arraigned on the indictment on February 24, 2005, and pleaded not guilty. At that time, the People offered a plea involving a sentence of 20 years. The defendant filed an omnibus motion which was considered by the court on July 19, 2005. The court granted a *Huntley* hearing and adjourned the case until September 14, 2005 for hearing and trial.

On September 14, 2005, the People answered not ready, and requested an adjournment until September 26, 2005 to secure the testimony of an eyewitness. The People also indicated that they would accept a plea of 15 years if defendant was willing to plead guilty on that day.

The judge responded by advising the defendant that after that day, "there would be no further discussions ever . . . I will never repeat it again nor will the District Attorney nor will anybody else. He is looking at obviously a lot more time." The defendant indicated that he did not understand the plea offer and wanted time to consider it. The judge adjourned the case to shortly before the hearing and trial scheduled for September 26 in order to give the defendant time to decide whether or not to accept the plea offer. The judge further warned the defendant that he would not entertain any pleas on September 26 and stated that if the defendant wanted a plea on that day, he was not going to get it.

On September 26, 2005, the People again answered not ready since their witness was out of the country and would not be available to testify until October 27. When the prosecutor requested that the time be excluded, the judge did not rule on the request but instead told defense counsel that if counsel tried to file a speedy trial motion on October 27, he would be "very upset." On October 27, defense counsel filed an order to show cause seeking the defendant's release. The judge responded that the case was going to be marked ready for trial the following day. Defense counsel also advised the court that the defendant was filing a CPL 30.30 speedy trial motion pro se and that defense counsel was filing a motion in support. The judge denied all motions and adjourned the case for trial.

On Friday, October 28, during the defendant's *Sandoval* hearing, the court stated:

> "[L]et me start off by saying on the record that it is my hope that Mr. Fisher gets a fair trial because frankly I believe in giving everybody a fair trial and *I also believe that when somebody commits a crime of this nature that if they are convicted that they should get the maximum sentence allowable by law* and so the last thing in the world I want to create is reversible error and I'm very careful about that and I have a record of getting reversed very few times so we're going to give him a fair trial. If he's acquitted, he is acquitted but *if he's convicted he will be a very*

*old man when he gets out of jail because whatever is the maximum sentence allowable by law he will get it"* (emphasis added).

The judge observed that the sentence for a predicate felony offender was 8 to 25 years, but that the defendant was "guarantee[d]" to get 20 to 25 years. The judge announced that the trial would proceed, and he would not entertain any further plea bargains, and that if convicted, the court would "deal with it" by giving defendant "what sentence [he felt] was appropriate." Despite these declarations, on Monday, October 31, 2005, the judge agreed to accept a guilty plea to first degree burglary and first degree attempted rape in return for a prison sentence of 17 years followed by five years of postrelease supervision. When the defendant returned to court on November 23, 2005, he was sentenced according to the terms of the plea agreement.

Upon conviction, the defendant executed a waiver of his right to appeal which specifically did not apply to (1) a constitutional speedy trial claim, (2) a challenge to the legality of the sentence promised by the judge, (3) a challenge to defendant's competency to stand trial, and (4) the voluntariness of his waiver of his right to appeal. Unquestionably, the defendant should have preserved a claim of coercion by the court by requesting to withdraw his guilty plea pursuant to CPL 220.60 (3), or by filing a motion to vacate judgment pursuant to CPL 440.10. However, we review his claim in the interest of justice.

It is well settled that a threat to impose a maximum sentence if the defendant is convicted goes beyond a description of the possible sentencing exposure and has consistently been held impermissibly coercive. (*People v Richards*, 17 AD3d 136 [1st Dept 2005]; *People v Stevens*, 298 AD2d 267 [1st Dept 2002], *lv dismissed* 99 NY2d 585 [2003]; *People v Sung Min*, 249 AD2d 130, 131-132 [1998].) A defendant's exercise of his right to trial is wrongly burdened when a court expresses its intent to impose the maximum sentence after trial, but a significantly shorter sentence if he accepts a plea. (*Sung Min*, 249 AD2d at 132.) Further, though allegations of coercion made off the record normally warrant an evidentiary hearing, where the coercive threat is in the record the defendant is entitled to withdraw his guilty plea. (*See e.g. Sung Min*, 249 AD2d at 131.)

While the People concede that the court's remarks made in defendant's presence could be considered coercive, this Court goes further and views the remarks as definitely so, since they were made before plea negotiations were concluded. In this

case, the record shows that the judge made the following remarks during the defendant's October 28, 2005 *Sandoval* hearing:

(1) "I . . . believe that when somebody commits a crime of this nature that if they are convicted that they should get the maximum sentence allowable by law."

(2) "[I]f he's convicted he will be a very old man when he gets out of jail because whatever is the maximum sentence allowable by law he will get it."

(3) "So it's very very possible that he would be looking at, if he gets convicted, anywhere between twenty and twenty-five years. I guarantee you it will not be less than that."

As the People correctly concede, these remarks are improperly coercive when made in the course of plea negotiations.

A plea is voluntary if it represents a choice freely made by the defendant among legitimate alternatives. (*People v Grant*, 61 AD3d 177, 182 [2d Dept 2009].). The court considers several factors to determine the voluntariness of a plea:

> "(1) the knowledge, intellect and criminal experience of the defendant; (2) the seriousness of the crime and the 'nature of the crime as clearly understood by laymen'; (3) the competency, experience and level of participation of counsel; (4) the rationality of the plea bargain; and (5) the speed or slowness of procedure in the particular court." (*People v Montford*, 134 AD2d 207, 208 [1987], *lv denied* 70 NY2d 1009 [1988], quoting *People v Nixon*, 21 NY2d 338, 353 [1967], *cert denied sub nom. Robinson v New York*, 393 US 1067 [1969].)

The People argue that three factors, the defendant's experience with the justice system, the favorable terms of the plea, and the totality of circumstances, support that it was voluntarily entered. Although it appears that the defendant has experience with the legal system as evidenced by his record and the rationality of the terms of his plea could favor a view that the plea was voluntary, we disagree that the totality of circumstances relied upon by the People supports such a conclusion.

The People claim that the context, nature, and timing of the judge's comments indicate that they were not coercive. The People contend that these remarks were made in the context of emphasizing the importance of a fair trial on the eve of trial rather than during plea negotiations. We disagree.

The judge may have stated several times that the defendant would be tried fairly, but he made these assurances while underscoring the fact that he was rarely reversed and that he had no intention of creating a reversible error in this case. Taken in context, such assurances together with the promise to impose the maximum sentence upon conviction sound like coercion rather than assurances of the court's fairness.

The People further argue that the judge's reluctance to entertain a plea is evidence that, in fact, he was not in favor of a plea agreement, and was not pressuring the defendant to plead guilty. However, again, viewed in context, the statements sound more like warnings to the defendant that he should take the plea, and take it sooner rather than later.

Ultimately, the People contend that by the time the remarks were made immediately prior to the *Sandoval* hearing, no plea offer was under consideration, so that the judge's remarks were made outside of the plea proceedings and could not have been coercive. This argument is entirely unpersuasive since the defendant's plea was accepted by the court just three days later on October 31, 2005. Hence, de facto, plea negotiations had not concluded at the time the subject remarks were made by the court. Indeed, the fact that the defendant was permitted to take the plea, and did so only three days after the remarks were made, not only strongly belies that argument but places the judge's remarks squarely in the impermissible area of coercion.

Accordingly, the judgment of the Supreme Court, New York County (Budd G. Goodman, J.), rendered November 23, 2005, convicting defendant, upon his plea of guilty, of burglary in the first degree and attempted rape in the first degree and sentencing him, as a second felony offender, to an aggregate term of 17 years, should be reversed, as a matter of discretion in the interest of justice, the plea vacated, and the matter remanded for further proceedings.

NARDELLI, J. (dissenting). Inasmuch as I do not believe the circumstances presented warrant review in the interest of justice (*see* CPL 470.15 [3] [c]), I dissent, and would affirm.

On January 15, 2005, defendant forced his way into a woman's apartment, forced the victim to take off her clothes and get onto her bed, pinned her down, and attempted to rape her. During the course of the attack, he struck the victim several times, causing injury, including a broken finger, as well as bruises to her arm and back, and scratches to her face. Neither

during the negotiations leading up to his eventual plea, nor on this appeal, has defendant controverted any of the facts concerning this vicious crime. He only claims that his plea was coerced.

Initially, defendant's claim that his plea was coerced is, as the majority acknowledges, unpreserved, because he did not move to withdraw the plea on that ground (*see People v Lopez*, 71 NY2d 662 [1988]). Additionally, the claim lacks merit.

On September 14, 2005, the People advised the court that an eyewitness who was needed for trial was still in Israel, although the witness had been expected to be back at that time. The prosecutor requested an adjournment until September 26 to allow the witness to appear.

The prosecutor then stated that the "recommendation for today only" was "fifteen years." The prosecutor added that, while she understood that defendant was seeking a much lesser sentence, the People were not inclined to offer less time. The prosecutor noted that defendant was facing up to 25 years on the charge of burglary in the first degree, and that there were other counts, including attempted rape, for which defendant could receive consecutive time.

The judge noted that nobody was pressuring defendant, and stated that he assumed defendant wanted to go to trial. When defendant indicated that he did not understand the terms of the offer, the court explained, "You are not entitled to a plea bargain. So that means the People can say, or the court can say, 'try the case.'" The court adjourned the case to September 26, and warned defendant that it was not going to entertain any pleas on September 26, and if defendant wanted a plea on that day, he was not going to get it. On September 26, the People answered not ready on the basis that the "necessary" witness was still in Israel because of a family emergency. Eventually, the case was adjourned to October 27, 2005.

On October 28, 2005, the court conducted a *Sandoval* hearing. After reviewing defendant's NYSID sheet, the court addressed the prosecutor as follows:

> "Ms. Gallo, let me start off by saying on the record that it is my hope that [defendant] gets a fair trial because frankly I believe in giving everybody a fair trial and I also believe that when somebody commits a crime of this nature that if they are convicted that they should get the maximum sentence allowable by law and so the last thing in the world I want

to create is reversible error and I'm very careful about that and I have a record of getting reversed very few times so we're going to give him a fair trial. If he's acquitted, he is acquitted but if he's convicted he will be a very old man when he gets out of jail because whatever is the maximum sentence allowable by law he will get it."

After confirming that defendant was a predicate felony offender, the court noted that for the class B violent felony of first-degree burglary, the minimum mandatory sentence was eight years and the maximum sentence was 25 years. The court then stated:

"So, it's very possible that he would be looking at, if he gets convicted, anywhere between twenty and twenty-five years. I guarantee you it will not be less than that. So it is, therefore, my desire in every case not only this case but every case to give a defendant a fair trial. To go back in the 1980's and allow in evidence his conviction in that case, I think would be not only inappropriate but I think that could create reversible error. So I will state for the record so that the appellate court will be aware of it the following so they will be aware of what my compromise is."

After recounting defendant's criminal history, which dated back to 1974 and included two felony convictions (third-degree burglary and attempted third-degree burglary) and 27 misdemeanor convictions, the court issued its *Sandoval* ruling.

Despite the court's prior indications that it would not accept a guilty plea after September 14, defendant was permitted, on October 31, 2005, to withdraw his plea of not guilty, and to enter a plea of guilty to burglary in the first degree and attempted rape in the first degree. In exchange for his guilty plea, the court promised to sentence defendant to a total prison term of 17 years, to be followed by five years of postrelease supervision.

On November 23, 2005, defendant appeared with counsel for sentencing. Defense counsel and the prosecutor relied on the promised sentence of concurrent terms of 17 years on the first-degree burglary and 15 years on the attempted first-degree rape, to be followed by five years of postrelease supervision. Defendant was reminded that he would be required to register as a sex offender, and when given the opportunity, defendant declined to address the court.

Certainly, where a court, during plea negotiations, states that upon conviction after trial, the maximum sentence would be imposed, such comments have been found to be impermissibly coercive, with the result that the plea should be vacated (*see e.g. People v Stevens*, 298 AD2d 267 [2002], *lv dismissed* 99 NY2d 585 [2003]; *People v Sung Min*, 249 AD2d 130 [1998]).

In the case at bar, however, the two statements made by the court did not occur during plea negotiations, but during a *Sandoval* hearing, and must be viewed within the context of the entire proceedings. Throughout the pretrial proceedings, the court had expressed its reluctance at allowing defendant to enter into any plea bargain in view of the serious crimes with which he had been charged. On September 14, 2005, when the prosecutor suggested a plea in exchange for a sentence of 15 years, prior to the two statements being made by the court which defendant is now challenging, the court gave defendant until a day or two before September 26 (the date the trial was scheduled to go forward) to decide whether he wanted to take the deal. When the parties returned to court on September 26 for trial, no mention was made by defendant of a plea agreement. In fact, the parties were in court on September 28 and October 27, and again no mention was made of a plea agreement, and the court proceeded as if the case was going to trial. On October 28, the judge made the two statements during the *Sandoval* hearing, when discussing its intention of giving defendant a fair trial, especially in view of the significant sentence that he faced.

At the time the statements were made, the record indicates that there was no extant plea offer. Thus, any comments by the court were not made as leverage to force defendant to accept a plea bargain to which he was opposed, but were being made to explain the court's benevolent *Sandoval* ruling. This contrasts with the situation in, for instance, *People v Wilson* (245 AD2d 161 [1997], *lv denied* 91 NY2d 946 [1998]), where the record made clear that the defendant believed himself coerced into taking the plea as a result of the threats by the court to impose the maximum.

The majority surmises that the period of time between the court's comments and the actual plea was too brief to conclude anything other than that the comments had a coercive effect. This conjecture, however, ignores the reality that the trial was about to commence, and that the witness who was out of the country had returned to testify against defendant. At that

juncture, the motivation for defendant to take the plea was not the threat by the court to impose a severe sentence, but the recognition that he would be convicted.

Thus, I see no reason to disturb the plea, which was clearly freely made, and which, under the circumstances, was hardly Draconian.

FRIEDMAN, J.P., and DEGRASSE, J., concur with CATTERSON, J.; NARDELLI, J., dissents in a separate opinion.

Judgment, Supreme Court, New York County, rendered November 23, 2005, reversed, as a matter of discretion in the interest of justice, the plea vacated, and the matter remanded for further proceedings.