People v White (2024 NY Slip Op 51138(U))

[*1]

People v White

2024 NY Slip Op 51138(U)

Decided on August 30, 2024

County Court, Warren County

Hobbs, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 30, 2024
County Court, Warren County

People of the State of New York,

against
Raymond C. White, Defendant

Indictment No. 2014-121-I

Hon. Jason M. Carusone, Warren County District Attorney, Assistant District Attorney Robert P. McCarty, Esq., for the People
Raymond C. White, pro se

Gary C. Hobbs, J.

Procedural Background
On March 26, 2024, the above named defendant filed a motion pursuant to CPL § 440.10 seeking to vacate his judgment of conviction in the above captioned matter, which conviction occurred on or about April 1 , 2015, based on the defendant's guilty plea to the charges of Attempted Murder in the Second Degree, Criminal Use of a Firearm ln the First Degree (two counts), Attempted Assault in the First Degree, Assault ln the Second Degree, and Criminal Possession of a Weapon in the Third Degree. 
On May 13, 2024, the People filed their opposition to the defendant's motion. In deciding this motion, the Court has reviewed and considered:
1. The Defendant's Notice of Motion dated March 21, 2024; and
2. Affidavit of Raymond C. White in support of the motion sworn to on March 21, 2024, together with attached exhibits; and
3. Defendant's Memorandum of Law in Support dated March 21, 2024; and
4. A "Personal Affidavit in Support" sworn to by Raymond C. White on March 21, 2024, together with attached exhibits; and
5. Affirmation in Opposition of Robert P. McCarty, Esq., Assistant District Attorney, sworn to on May 13, 2024, together with attached exhibits; and
6. Defendant's Reply Affirmation received on June 27, 2024; and
7. The official transcript of record of proceedings of this Court held on June 20, 2014, September 10, 2014, December 17, 2014, January 5, 2015, January 30, 2015, February 20, 2015, February 23, 2015, and April 1, 2015.
8. The Record on Appeal from the defendant's appeal to the Appellate Division, Third Department.
In this motion, the defendant asserts that his plea of guilty was not made knowingly, voluntarily, and intelligently as his attorney, Robert Kelly, had failed to inform him of a [*2]statement from a possible witness, Bruce Bardin, who stated that he saw someone other than defendant committing the crimes charged [White Affidavit pg. 2, White Personal Affidavit pg.2]. Here, the defendant claims that he first learned of this potential witness a few years after his conviction when he received a pack of papers from his attorney [White Personal Affidavit pg.2]. The defendant also asserts that he is innocent of the charges stating, "I knew that I was innocent and had I known about this statement, I would never had plead guilty and instead I would have proceeded to trial." [White Personal Affidavit pg.2]. The defendant also claims that he was coerced to enter a guilty plea by Judge Hall's warnings that, if convicted at trial, he could be sentenced to 50-years of incarceration [White Affidavit pg. 2, White Personal Affidavit pg.2].Finally, the defendant claims that his Alford plea allocution was legally insufficient.
In response, the People assert that the defendant's claims of ineffective assistance of counsel are insufficient and not supported by the record [McCarty Affirmation ¶s 17-26]. The People further assert that the defendant's claims of coercion by alleged misstatements of the possible maximum term of incarceration are barred and not supported by the record [McCarty Affirmation ¶s 27-34] and that the defendant's Alford plea allocution was legally sufficient and was knowingly, voluntarily, and intelligently made [McCarty Affirmation ¶s 35-41].

Findings of Fact
On June 4, 2014, at about 9:00 p.m., Robert Smith left work at Walmart, located on State Route 9, in the Town of Queensbury [GJ Transcript, pp. 32, 35]. He walked to his car and got into the driver's seat [GJ Transcript, pp. 35-36]. While seated in his car, a male figure approached the motor vehicle with a long shotgun or rifle, and began shooting into the vehicle at Smith [GJ Transcript p. 37]. Smith was able to get a good look at the shooter, and he identified the defendant, Raymond White, as the shooter [GJ Transcript, pp. 38-39]. Smith's medical records reflected that he was struck multiple times with birdshot in the face and upper body [GJ Transcript, pp. 42-45]. Smith suffered substantial pain and needed pain medication to manage that pain [GJ Transcript, pp. 40-41].
On June 13, 2014, a Warren County Grand Jury handed up a six count indictment, which charged the defendant with the crimes of Attempted Murder in the Second Degree (PL§§ 110.00/125.25 [1]); Criminal Use of a Firearm in the First Degree (PL§ 265.09 [l][a]); Criminal Use of a Firearm in the First Degree (PL§ 265.09 [l][b]); Attempted Assault in the First Degree (PL§§ 110.00/120.10 [1]); Assault in the Second Degree (PL§ 120.05 [2]); Criminal Possession of a Weapon in the Third Degree (PL§ 265.02 [1]). [McCarty Affirmation, R. 3-5].
On June 20, 2014, Defendant was arraigned on the indictment, and he was served with the People's notice of trial readiness, which contained voluntary disclosures [McCarty Affirmation ¶ 6, R. 9-17]. On July 16, 2014, defense counsel filed an omnibus motion on Defendant's behalf [McCarty Affirmation ¶ 6, Ex. 1]. On January 5, 2015, Defendant appeared in court and rejected the People's offer of fifteen years determinate with an additional five years of post-release supervision [R. 34-38]. On January 22, 2015, the People served defense counsel with Bruce Bardin's exculpatory statement [McCarty Affirmation ¶ 23, People's Ex. 3]. On January 30, 2015, a combined Huntley/Molineux/Sandoval hearing was held with the defendant present [McCarty Affirmation ¶ 6, R. 39-97]. During this hearing, the District Attorney stated on the record, with the defendant present in court, that his office had provided defense counsel a witness' statement, and further stated that this "one witness believes he saw someone
who clearly wouldn't have been Raymond White involved in this [shooting]. We've got to prove the [*3]identity of the shooter. We've got that burden." [McCarty Affirmation, R.76] (emphasis added).
On February 23, 2015, the date for the commencement of the trial, the defendant, who was represented by attorneys Robert M. Kelly, Esq.,[FN1]
and Garfield Raymond, Esq., entered an Alford plea [North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160 (1970)] to the entire indictment with charges of Attempted Murder in the Second Degree, Criminal Use of a Firearm ln the First Degree (two counts), Attempted Assault in the First Degree, Assault ln the Second Degree, and Criminal Possession of a Weapon in the Third Degree [February 23, 2015 Record of Proceedings]. Prior to his plea allocution, the Defendant was placed under oath [R. 114, Feb. 23, 2015, Transcript, pg.2].
The Court then advised the defendant that, if he was convicted on all charges in the Indictment, he could be sentenced to up to 30 years of incarceration determinate and five years of post-release supervision [R. 114]. If the defendant desired to enter a guilty plea to the entire Indictment, the Court promised that the defendant would be sentenced to no more than twenty years of incarceration, and no less than five years of post-release supervision [R. 114-115]. The defendant stated that he wanted to enter a guilty plea to the entire indictment [R. 115]. The Defendant's attorney, Raymond Garfield, confirmed that he had reviewed the strengths of the People's case and any possible defenses with the defendant [R. 116-17]. The defendant confirmed that he had sufficient time to discuss his case with his attorneys, and that he was satisfied with the job his attorneys had performed for him [R. 116]. The Defendant stated that he understood that, as a result of his plea, his charges would not be heard or decided by a jury, and that the defendant's guilty plea would result in a waiver of any possible defenses that he had on the charges [R. 117]. The Defendant confirmed that he was of sound mind and was thinking clearly [R. 117-18]. He confirmed that he was feeling in good physical and mental health [R. 118]. The Defendant confirmed that he knew that he was not required to enter a guilty plea, and had the right to continue to have a jury trial [R. 118-19]. This Court advised the defendant that he was still entitled to a number of important rights, including his right to have an attorney represent him free of charge; the right to confront and cross-examine any witnesses or evidence produced at the trial; and the right to require the People prove his guilt beyond a reasonable doubt based only on legal evidence [R. 119]. The Defendant confirmed that he understood that by entering a guilty plea, he would be waiving or giving up all of those legal rights [R. 119-20]. The defendant testified that no one had forced or threatened him to plead guilty [R. 120]. He affirmed that, other than to sentencing promise made by the Court, no one made any promises to the defendant to get him to enter a guilty plea [R. 120].
When the Court inquired as to the Defendant's guilt of the crimes to which he was pleading guilty [R. 120-21], the Defendant asserted that he did not have a recollection of what occurred on the date of the crime [R. 120-21]. The County Court discussed some of the evidence that the court was aware of that existed that could prove the Defendant's guilt [R.121]. The Defendant acknowledged sending letters to witnesses, Barrett and Kim Williams, but the Defendant claimed to not recall the contents of those letters, which had admitted that he committed the offenses that were charged [R. 121-22]. The Court then confirmed with defense counsel and the defendant the reasons why the Defendant wanted to enter an Alford plea [R.122-23]. The following exchange was stated on the record:
Attorney Raymond: We just got that with the Rosario materials. However, I will point out to the Court, we have had lengthy discussions with him. 
 Giving him the evidence as we see it and laid it out and relying on that, he doesn't want to take the risk of going to trial and having a much greater sentence. He would rather have the range understanding. We like to proceed.
The Court: Mr. White, is that correct?
The Defendant: Yes, it is.
The Court: Are you concerned that there is a lot of evidence against your and you might get convicted and you might wind up doing a lot more time?
The Defendant: Yes.
The Court: A long time ago there was a man named Mr. Alford. Mr. Alford said he didn't remember much about doing the crime. On the other hand, the lawyer showed him all this evidence and he said if I was on the jury I would find myself guilty. I don't want to take a chance doing 30 years. I want to make sure I don't do anymore than 20 years. Mr. Alford didn't plea because he can't remember. Is that the same problem you are having?
The Defendant: Yes.
The Court: Are you concerned if the case went to a jury, you might get convicted and then do a lot more time?
The Defendant: Yes.
The Court: Is that why you want to plead guilty to all these charges?
The Defendant: Yes.(R. 122-23) (emphasis added).
The Court then allowed the defendant to enter an Alford plea to the entire indictment [R. 123-25]. After accepting the Defendant's plea, the People recited additional factual basis demonstrating the abundance of evidence available to support a possible conviction upon a trial of the indictment [R. 125-27]. More specifically, the People noted that there were several witnesses aware of the defendant's animosity towards Smith; that the Defendant had been communicating to others of his intent to kill Smith; that the Defendant left letters with Barrett Williams, admitting to committing the crime; that he sent letters from jail where he stated he does not remember what happened, but said that he snapped and wished to take back his actions; that video footage put the Defendant's car at the scene; additional evidence and analysis from the scene of the incident tying the defendant to the crime; and medical records of Smith's injuries [R. 125-27]. These materials were provided to Defendant's attorneys and according to the plea minutes, his attorneys discussed the evidence with the defendant [R.122-23, 127-28]. In fact, when asked by this Court, the defendant agreed that his attorneys had reviewed the evidence with him [R.122]. Moreover, the victim, Mr. Smith, testified before the grand jury that he was able to exit the vehicle after being shot and obtain a good look at shooter and identified him as Raymond White [McCarty Affirmation ¶ 2, GJ Testimony, pp. 38-39].
On April 1, 2015, the defendant was sentenced, pursuant to his agreement with the Court, to a determinate term of incarceration of 18 years on the charge of Attempted Murder in the Second Degree followed by 5 years post-release supervision; a determinate sentence of 18 years followed by 5 years post-release supervision on each count of Criminal Use of a Firearm ln the First Degree (two counts); a 15 year determinate sentence followed by five years post-release supervision on the charge of Attempted Assault in the First Degree; a 7 year determinate [*4]sentence followed by 5 years of post-release supervision on the charge of Assault in the Second Degree; and 2 1/3 to 7 years of incarceration on the charge of Criminal Possession of a Weapon in the Third Degree. All of the sentences ran concurrently with each other [April 1, 2015, Record of Proceedings, pg.11].
The Defendant appealed his conviction to the Appellate Division, Third Department, which included his present claim that his guilty plea was coerced by the trial judge. The Appellate Division affirmed the defendant's convictions and respective sentences on each of the counts. See, People v. White, 157 AD3d 1128 (3d Dept. 2018), lv. to app. den., 31 NY3d 1018.

Analysis
Criminal Procedure Law § 440.10(1) provides the grounds available to defendants to vacate a judgment of conviction. Once a CPL 440.10 motion and any supporting documentary evidence or information has been submitted, the court is obligated to consider the submitted material "for the purpose of ascertaining whether the motion is determinable without a hearing to resolve questions of fact." (CPL 440.30[1][a]). The Court must deny the motion when the judgment is appealable at the time of the making of the motion and sufficient facts appear on the record to permit adequate appellate review. CPL § 440.10[2][b]; People v Fuller, 29 Misc 3d 1207(A) [Sup. Ct., New York County, 2010]. The court must grant the motion without conducting a hearing if the moving papers allege a ground constituting a legal basis for the motion (CPL § 440 .30[3][a]), which legal basis, if factually supported by sworn allegations of fact (CPL § 440.30 [3] [b]), and where the sworn factual allegations essential to the motion are either conceded by the People or are conclusively substantiated by unquestionable documentary proof. (CPL § 440.30[3][c]).
The court may deny the motion without a hearing, if the moving papers fail to allege a ground constituting a legal basis for the motion (CPL § 440.30[4][a]) or fail to allege sufficient facts to support the legal ground asserted (CPL § 440.30 [4][b]. People v. Session, 34 NY2d 254, 255—256, 357 N.Y.S.2d 409, 313 N.E.2d 728 [1974]. The court may also deny the motion summarily if an essential factual allegation "(i) is contradicted by a court record ... or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true." (CPL § 440.30[4][d]) (emphasis added). Only if the court does not determine the motion pursuant to the other provisions of CPL § 440.30 must a hearing be conducted (CPL § 440.30[5]). 
Thus, without sworn allegations substantiating or tending to substantiate all the essential facts necessary to support the defendant's motion, the court should deny the motion without a hearing. See, CPL 440.30 [4][b]; People v. Session, 34 NY2d 254, 357 N.Y.S.2d 409, 313 N.E.2d 728; People v. Britt, 148 AD2d 911, 539 N.Y.S.2d 540); People v LaPella, 185 AD2d 861, 862 [2d Dept. 1992] (To obtain a hearing on a motion to vacate a judgment of conviction, it is the defendant's burden as movant to come forward with allegations that raise a triable issue of fact sufficient to challenge the presumed validity of a judgment of conviction). It is the defendant's burden to come forward with allegations that raise a triable issue of fact sufficient to challenge the presumed validity of a judgment of conviction. See, People v. Session, 34 NY2d 254, 255—256, 357 N.Y.S.2d 409, 313 N.E.2d 728 [1974]; People v. Bacchi, 186 AD2d 663, 664—665, 588 N.Y.S.2d 619 [1992]. Mere conclusory allegations of ultimate facts are [*5]insufficient to warrant a hearing. People v. Brown, 56 NY2d 242, 246—247, 451 N.Y.S.2d 693, 436 N.E.2d 1295 [1982]; see also, People v. Broxton, 34 AD3d 491, 492, 824 N.Y.S.2d 127 [2006]. 
In the present case, the defendant's verified Petition fails to support that a violation of his constitutional rights occurred. More specifically, the defendant asserts that his guilty plea and conviction must be reversed because: (1) his attorney, Robert Kelly, Esq., failed to advise him of a statement made by Bruce Bardin, which described the shooter as a person who could not be the defendant and if he had known about this letter, he would not have entered a guilty plea; (2) the Court failed to inquire whether defense counsel had discussed a possible extreme emotional disturbance "EED" defense with the defendant [White Affirmation in Support pg. 5]; and (3) attorney, Robert Kelly, Esq., provided ineffective assistance to the defendant. As a result, the defendant asserts that his guilty plea was not knowingly and voluntarily made. CPL § 440.10(1)(i). 
The defendant's present assertions are supported only by the defendant's conclusory statements in his Petition and, more importantly, his assertions are directly contradicted by the Court's record. Under these circumstances, the trial court must deny the motion to vacate his plea. People v. Taylor, 211 AD2d 603, 603, 621 N.Y.S.2d 877 (1st Dept. 1995), lv. den., 85 NY2d 981, 629 N.Y.S.2d 741, 653 N.E.2d 637 [1995]; see also, People v. Woodard, 23 AD3d 771, 772, 803 N.Y.S.2d 776 (3d Dept.2005) (where the defendant's affidavit, "the sole proof submitted in support of his motion, contained only conclusory generic allegations," the trial court properly denied the motion without a hearing), lv. den., 6 NY3d 782, 811 N.Y.S.2d 349, 844 N.E.2d 804 (2006); People v. Sayles, 17 AD3d 924, 794 N.Y.S.2d 160 (3d Dept.2005) (trial court properly denied motion without a hearing where the defendant's allegations were contradicted by the record), lv. den., 5 NY3d 794, 801 N.Y.S.2d 815, 835 N.E.2d 675 (2005). Here, the defendant's Petition contains self-serving and conclusory averments, which fail to allege any factual basis to vacate his plea. 

CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL
A. Alleged Failure to Provide Exculpatory Evidence to the Defendant
In his motion, the defendant asserts that his attorney, Robert Kelly, failed to provide effective assistance because attorney Kelly allegedly never provided him with a copy of Mr. Bardin's statement, which stated that he saw a white male who shot the victim, and that Mr. Bardin's description could be the defendant [White Affidavit in Support pp. 6]. He further asserts that attorney Kelly never discussed Mr. Bardin's statement with him [White Affidavit in Support pp. 7], and the existence of an exculpatory witness was never discussed at the suppression hearing or during the plea allocution [White Reply Affidavit ¶4]. Here, the defendant asserts that there was "no mention of this statement is made any where [sic] on the record." [White Reply Affidavit ¶4] (emphasis added).
The defendant's assertions are based entirely on the conclusory allegations contained in his Affidavit in Support and in his Reply Affidavit. More importantly, the defendant's present claim is directly contradicted by this Court's record. On January 22, 2015, eight days before the joint Huntley/Molineux/Sandoval hearing, the People served defense counsel with a copy of Bruce Bardin's statement [McCarty Affirmation ¶ 23, People's Ex. 3]. On January 30, 2015, during the suppression hearing, D.A. Carusone stated, on the record, with the defendant present [*6]in court, that his office had provided defense counsel a witness' statement, and further stated that this "witness believes he saw someone who clearly wouldn't have been Raymond White involved in this [shooting]. We've got to prove the identity of the shooter. We've got that burden." [R. 76] (emphasis added). Thus, contrary to the defendant's present position, Mr. Bardin's potential exculpatory evidence was openly discussed on the record during the January 30, 2015, suppression hearing. 
In addition, in direct contradiction to the defendant's present assertion, during the February 23, 2015, plea allocution, defendant's co-counsel, Garfield Raymond, confirmed that he was "[g]iving him[the defendant] the evidence as we see it and laid it out and relying on that, he doesn't want to take the risk of going to trial and having a much greater sentence." [R.122] (emphasis added). The defendant then confirmed, under oath, that attorney Raymond's statement that he had been giving the defendant copies of the evidence as he received it was correct [R.122]. Curiously, in his motion, the defendant never mentions what evidence or documents attorney Raymond shared, provided, or discussed with him. Instead, he merely claims that attorney Kelly did not provide or discuss Mr. Bardin's statement with him. As a result, the defendant's present motion does not contradict attorney Raymond's statement on the record that Mr. White was being provided with the evidence as attorney Raymond received it. The defendant's present claim does not contradict his own sworn testimony made during his plea allocution that attorney Raymond's representation of the disclosure of evidence was accurate.
B. Alleged Failure to Explain an Extreme Emotional Disturbance Defense
The defendant further asserts that his attorney allegedly failed to "explain to him the affirmative defense of 'mental disease or defect.'" [White Affidavit pg. 5]. He further asserts that he did not knowingly and voluntarily waive his right to present this defense because he did not know about it [White Affidavit pg.5]. Here, the defendant asserts that his defense attorneys raised an extreme emotional disturbance defense for the first time during his sentencing [White Affidavit, p.6].
Again, the defendant's present assertion is based entirely on the conclusory allegations contained in his Affidavit in Support and in his Reply Affidavit, and are contradicted by this Court's record. Prior to accepting his plea, the defendant confirmed, under oath, that he was satisfied with the performance of his attorneys [R. 116]. He further confirmed that he had discussed the strengths and weaknesses of his case with his attorneys [R 116-17]. He confirmed that he had received the discovery materials, which was being provided to him as attorney Raymond received it [R. 122]. The defendant stated that he understood that, if he entered a guilty plea, then his case would never go before a jury, and that he would not have the ability to raise any possible defenses [R. 116-17]. Before entering the plea, he confirmed that he was of sound mind and body [R. 117-18]. He confirmed that he was thinking clearly [R.118]. He stated that he was aware that he was not required to enter a guilty plea [R. 118-19]. This Court advised the defendant that he was still entitled to a number of important rights, including the right to have an attorney represent him free of charge; the right to confront and cross examine witnesses; and the right to require the People to prove him guilty beyond a reasonable doubt using only legal evidence [R. 119]. The defendant confirmed that he understood that by entering a guilty plea he would be foregoing all of those important rights [R. 119-20]. The defendant also affirmed that no one had forced, threatened, or made Defendant any other promises, to coerce [*7]him to enter a guilty plea [R. 120].
Thus, the defendant's conclusory claims of an ineffective assistance of counsel are facially insufficient. Moreover, the defendant's conclusory statements are directly contradicted by this Court's record and under these and all the other circumstances attending the case, the defendant's supporting affidavits do not demonstrate a reasonable possibility that the defendant's present allegations are true. See, CPL § 440.30[4][d]). The defendant's motion is properly denied without a hearing. See, People v. McCaskell, 206 AD2d 547, 615 N.Y.S.2d 55 (2d Dept. 1994), app. den., 84 NY2d 869, 618 N.Y.S.2d 15, 642 N.E.2d 334 (1994); People v Tinort, 5 Misc 3d 238, 242 (Sup. Ct., New York County, 2004). 

SUFFICIENCY OF THE DEFENDANT'S ALFORD PLEA
The defendant also claims that his Alford plea [400 U.S. 25 (1970)] was improper and was not made knowingly and voluntarily because: (a) the Alford type of plea was not explained to him [White Affidavit pg. 12]; (b) he "did not state a factual reason for the Court to accept an Alford plea . . . " [White Affidavit pg. 4]; (c) a mental health evaluation and report was required before entering his plea [White Affidavit pg. 5]; (d) the record contains no evidence or factual basis his guilt and [White Affidavit pg. 5]; and (e) the Court should not have accepted the plea without inquiring whether the defendant was intoxicated or impaired on the date of the crime and lacked the requisite mens rea [White Affirmation pg. 6].
"An Alford plea, wherein the accused is permitted to enter a guilty plea without admitting culpability, may be allowed only where such plea 'is the product of a voluntary and rational choice, and the record before the court contains strong evidence of actual guilt.' " People v Vittengl, 203 AD3d 1390 [3d Dept 2022], citing, People v. Stewart, 307 AD2d 533, 534, 763 N.Y.S.2d 688 [2003], quoting, Matter of Silmon v. Travis, 95 NY2d 470, 475, 718 N.Y.S.2d 704, 741 N.E.2d 501 [2000] [citation omitted]. See also, People v. Ture, 94 AD3d 1163, 1164, 941 N.Y.S.2d 530 [2012], lv denied, 19 NY3d 968, 950 N.Y.S.2d 120, 973 N.E.2d 218 [2012]; People v. Washington, 51 AD3d 1223, 1223—1224, 858 N.Y.S.2d 434 [2008]. A defendant entering an Alford plea is not required to make a factual recitation of his or her guilt; rather, "the court may accept the plea if satisfied that there is a sufficient factual basis for the plea based on its review of the information before it." People v Vittengl, 203 AD3d 1390 [3d Dept 2022], quoting, People v. Stewart, 307 AD2d at 534, 763 N.Y.S.2d 688. Moreover, "[p]rotestations of innocence do not preclude the court from accepting an Alford plea." People v Vittengl, 203 AD3d 1390 [3d Dept 2022].
In People v Vittengl, 203 AD3d 1390 [3d Dept 2022], the Appellate Division, Third Department, held that an Alford plea was sufficient where, as here, the County Court apprised defendant of the rights that he would be forfeiting by pleading guilty, including the right to a jury trial, the right to be represented by counsel, the right to remain silent and the right to cross-examine the People's witnesses, and where the defendant assured the court that he had been afforded sufficient time to confer with counsel and was satisfied with his counsel's services, that he had not been threatened, forced or otherwise pressured to accept the Alford plea, that he was aware of the evidence against him, the strength of the People's case and any potential defenses and that he desired to enter an Alford plea in order to conclude the matter and avoid a potentially longer period of incarceration. Id., citing, People v. Roosevelt, 169 AD3d 1117, 1118, 93 N.Y.S.3d 458 [2019], People v. Matthie, 34 AD3d 987, 989, 824 N.Y.S.2d 454 [2006], lv. den., [*8]8 NY3d 805, 847, 830 N.Y.S.2d 706, 831 N.Y.S.2d 106, 863 N.E.2d 111, 862 N.E.2d 798 [2007], People v. Stewart, 307 AD2d at 534, 763 N.Y.S.2d 688.
In the present case, similar to the case of People v. Vittengl (230 AD3d 1390), during the plea allocution, defendant White confirmed, under oath, that he was satisfied with the performance of his attorneys [R. 116]; he had discussed the strengths and weaknesses of his case with his attorneys [R 116-17]; he had received the discovery materials, which was being provided to him as attorney Raymond received it [R. 122]; he understood that, if he entered a guilty plea, then his case would never go before a jury, and that he would not have the ability to raise any possible defenses [R. 116-17]; he was of sound mind and body [R. 117-18]; while he was taking medication, there was nothing about the medication that prevents him from thinking clearly [R. 118]; his medication helps him to think clearly [R. 118]; he was feeling in good physical and mental health [R. 118]; he was aware that he was not required to enter a guilty plea and could continue to trial [R. 118-19]; he was still entitled to a number of important rights, including the right to have an attorney represent him free of charge; the right to confront and cross examine witnesses; and the right to require the People to prove his guilt beyond a reasonable doubt using only legal evidence [R. 119]; he understood that by entering a guilty plea he would be foregoing all of those important rights [R. 119-20]; that no one had forced, threatened, or made Defendant any other promises, to coerce him to enter a guilty plea [R. 120]; he wanted to enter a guilty plea because there was a lot of evidence against him and he understood that he might get convicted and could be sentenced to 30 years of incarceration and 5 years post release supervision [R.122-23]; and he wanted to avoid the risk of a conviction and sentence after a trial [R.122].
In addition, the record reveals strong evidence of the defendant's actual guilt. More specifically, prior to the shooting, the Defendant had disclosed to Dalton Barrett of his plan to kill Smith [McCarty Affirmation ¶ 4; GJ at 48]. The defendant gave Mr. Barrett an envelope with handwritten letters. Mr. Barrett recognized the Defendant's handwriting and was alarmed by their contents, in light of the alleged conduct and Barrett's prior conversation with Defendant [McCarty Affirmation ¶ 4, GJ at 50-51, GJ Ex. 13]. During the shooting, the victim, Robert Smith, was able to exit the vehicle, get a good look at the shooter, who he identified as the defendant [McCarty Affirmation ¶ 2, GJ at 38-39]. According to Mr. Smith's sworn statement, after he started his car, "I saw a black guy with a rifle running at me. As he got closer, the guy was someone I know. His name is Raymond White. He was dressed in dark clothes, and he had a rifle or something. Raymond is my girlfriend's ex-boyfriend. Her name is Priscilla Clark." [Smith 6/4/14 Supporting Deposition]. Mr. Smith further affirmed that "Raymond got close to the car and I saw him raise the gun and fire a shot at me. I heard the bang and saw the flash. I leaned to my right and the bullet came through the front windshield. I got hit and I was in pain on my left side and my left eye. I moved forwards the driver's side door and he shot again. I don't know if it went through the window or door, but I was hit again." [Smith 6/4/14 Supporting Deposition]. Mr. Smith suffered a shotgun wound to the face and upper body. Smith's medical records reflected that he was struck multiple times with birdshot [McCarty Affirmation ¶ 3, GJ at 42-45].
During the plea allocution, the District Attorney reviewed the strength of the People's evidence against the defendant which included that the several witnesses would testify that the defendant had expressed animosity towards Mr. Smith; the defendant had previously confronted Mr. Smith at the Walmart store (where he was shot); the defendant had sent texts to witnesses [*9]that he planned to kill Smith; prior to the shooting, the defendant left letters with his stepson indicating that his girlfriend would have to choose the funeral that she attended; after the shooting, the defendant sent an incriminating letter from jail and confirmed the letter by text messages, essentially stating that he "lost it" on the day of the shooting; he told his girlfriend that he just "snapped" and that he regretted his actions and wished he could take them back; there is video footage placing his vehicle at the scene of the shooting; the physical evidence included 3 shotgun shells outside the victim's vehicle and shotgun damage to the windows and doors of his vehicle; the shooting was at close range within feet of Smith's vehicle; Mr. Smith survived the shooting and was hospitalized for several days [R. 125-26]. This evidence was in addition to the victim's identification of the defendant as the shooter.
Based on the foregoing, the defendant's Alford plea was the product of a voluntary and rational choice, and the record before the Court contains strong evidence of the defendant's actual guilt. People v Vittengl, 203 AD3d 1390 [3d Dept 2022]; Matter of Silmon v. Travis, 95 NY2d 470, 475, 718 N.Y.S.2d 704, 741 N.E.2d 501 [2000]; People v Richardson, 72 AD3d 1578, 1579 [4th Dept 2010]. Defendant's application to vacate his plea based on the alleged insufficiency of the Alford plea is DENIED.

Defendant's Claim of Coercion by the Court
The defendant further asserts that Hon. John Hall coerced his guilty plea by repeatedly telling him that, if he was convicted, he would receive a heavier sentence [White Affirmation pg.2]. The defendant asserts that his case is similar to People v. Fisher, 70 AD3d 114, where the Appellate Division found that the trial court exerted undue coercion when the judge expressed his intention to impose the maximum sentence after trial, but a significantly shorter sentence if the defendant accepted a plea [White Affidavit pg. 11]. Here, the defendant asserts that the trial court coerced his guilty plea by telling him that he could receive a sentence of fifty years if he was convicted at a jury trial [White Affirmation pg. 11]. The defendant further asserts that "the record shows that the judge made the following remarks during the defendants [sic] court proceedings:
1. "I [...] believe that when someone commits a crime of this nature that if they are convicted, that they should get the maximum sentence allowable by law."
2. "(I)f he's convicted, he will be a very old man when he gets out of jail because whatever is the maximum sentence allowable by law he will get it."
3. "So its very very possible that he would be looking at, if he gets convicted, anywhere between twenty and twenty-five years. I guarantee you It will not be less than that." [White Affidavit pg. 12] (emphasis added). The defendant further asserts that the "judge have [sic] stated several times that this defendant would be tied fairly, but he made these assurances while underscoring the fact that he was rarely reversed and that he had no intention of creating a reversible error in this case. Taken in context, such assurances together with the promise to impose the maximum sentence upon conviction sound like coercion rather than assurances of the court's fairness." [White Affidavit pg. 13].
Contrary to the defendant's present assertion, the record reflects that Judge Hall never [*10]made the alleged comments set forth above or even any statements similar to these alleged comments. In preparing this Decision and Order, this Court has reviewed the official transcript of record of proceedings of this Court held on June 20, 2014, September 10, 2014, December 17, 2014, January 5, 2015, January 30, 2015, February 20, 2015, February 23, 2015, and April 1, 2015. At no time did Judge Hall threaten the defendant with the maximum sentence allowable by law if he was convicted in a trial. Judge Hall never told the defendant that he would be a "very old man" when he gets out of jail because he would get the maximum sentence. Judge Hall never stated that it was very possible that he would be convicted after a trial. Judge Hall never "guaranteed" that the defendant would be sentenced to not less than twenty-five years if he was convicted after trial. While the defendant is correct that Judge Hall guaranteed the defendant a fair trial [R.42], Judge Hall never underscored that he was "rarely reversed" or further promised "to impose the maximum sentence upon conviction [R.42-43].
The defendant also asserts that his guilty plea was coerced by Judge Hall when the judge "threatened" that he would be consecutively sentenced to fifty years of incarceration, which was not a possible or legal sentence for the crimes charged, if he was convicted after a trial [White Affidavit pg. 4, 9; White Personal Affidavit in Support pg. 1] (" . . . the day came when the People offered me 15 years. I refused to accept this offer because I knew that I was not guilty. Then the trial judge threatened me with 50 years if I did not take the People's offer and was found guilty by a jury."). See, White Reply Affidavit pg. 6.
Again, the defendant's present assertion of a coerced guilty plea by Judge Hall threatening the defendant with 50 years of incarceration upon a conviction after a jury trial is contradicted by the record. 
On December 17, 2014, there were plea bargain negotiations placed on the record. Here, the record reflects the following exchange between the Court and the defendant:
THE COURT: As you know, we have had a lot of plea discussions about your case previous to this morning. There was an offer whereby if you pleaded guilty to count 1 and 2, that means you plead guilty to Attempted Murder and Criminal Use of a Firearm in the First Degree, that I would sentence you to 15 years determinate and 5 years post release supervision on the Attempted Murder. Then there would be an additional 5 years determinate and 5 more years post release on the firearm charge. That up until this morning the offer was that that would have to run on top of it. That lawyers call that a consecutive sentence. Meaning you would serve 20 years determinate. You get good time off of that in state prison, but it would be a 20 plus 5 sentence.
Just about 5 minutes ago we had a discussion with Mr. Kelly, Kate Hogan the District Attorney and also Mr. Carusone, he assistant district attorney. And Mr. Kelly made a number of valid cogent points with regard to the victim. It sounds like the victim has recovered, at least fairly well. That you have a very minimal criminal record. I think you had one or two prior misdemeanors. That there is some mental health involved. A long story short, the district attorney has agreed to run those two concurrent. So even though you would still plead guilty to the two charges and even though I would sentence you to 15 years determinate on the Attempted Murder and 5 years on the firearm charge, it would run at the same time. Meaning the most you would serve is 15 years. And again, you would get 2 or more years off for good behavior as long as you do everything you have to do in state prison.
Now, you have the right to have a trial. On the other hand, you have to understand if you have a trial and you are convicted of these things, then whatever plea bargains there are, they're all off the table and they disappear. The attempted murder charge it could be 25 determinate and 5 more years post release supervision. And we are getting a little ahead of ourselves. Mr. Kelly will want to make some arguments, but I believe the criminal possession of a firearm could get another up to 25 years determinate and that could run consecutive on top of that. Now we're talking about 50 years determinate and 5 more years post release supervision. So, you don't have to plead guilty to anything, but it's important you understand that this plea bargain agreement is only made here for a limited time. And that you don't have to do that, but if you get convicted after a jury trial, you can't say oh, by the way, I want to go back to that 15 years we talk about. At that point that is water under the dam, or over the dam and under the bridge. It would be too late to do that.
Is there anything the People want to add to the discussion?
MR. CARUSONE: Judge, I think you are relating exactly what was said. The other thing I would add is there would be a waiver of appeal, he is required to give his DNA by law, full order of protection, restitution if there is any and I think there was one other item I wanted to raise. Because of some of the issues is attorney had raised, the People and the Court, my understanding, would be satisfied with an Alford Plea.
THE COURT: That is correct. Mr. Kelly, is that your understanding of the latest plea offer?
MR. KELLY: That is the sum and substance of what the offer is. It is my understanding the court and district attorney's office is going to allow my client a couple of weeks to contemplate that. Think about it. Talk to his family and give us a chance to talk about it again. And I believe we're going to come back on January 5, is that correct?
THE COURT: Right. Because this just happened about 5 minutes ago. It's not fair to bring you out here and make a decision about your future, which might take the next 15 years of your life or perhaps the next 50 years of your life. If you have any questions, you can ask Mr. Kelly.What I am going to do is adjourn the case until January 5 at 11:30. At that point, we need to you make a decision. [R. 27-30] (emphasis added).
While the defendant correctly states that Judge Hall incorrectly advised him that a potential maximum sentence could be up to fifty years of incarceration, Judge Hall never threatened that he would be sentenced to 50 years of incarceration and never threatened or promised that he would be sentenced to the maximum sentence if convicted after a trial. Instead, Judge Hall merely attempted to warn the defendant that, if he was convicted after a trial, he could not then ask to accept a plea offer with 15 years of incarceration [R. 30]. More importantly, at the January 5, 2015, court appearance, the defendant rejected the People's plea offer [R. 34-37]. Thus, contrary to the defendant's present assertion, Judge Hall's error did not cause the defendant to accept the plea bargain offer. Instead, he rejected the plea offer despite Judge Hall's error. 
Moreover, during the February 23, 2015, plea allocution, Judge Hall correctly advised the defendant that the possible maximum sentence was up to 30 years of incarceration with 5 years [*11]of post-release supervision [R. 114, 123]. Prior to entering his guilty plea, the defendant acknowledge that he understood that the maximum possible sentence was 30 years of incarceration [R. 123] and that he wanted to accept Judge Hall's offer to plead guilty to the entire indictment to have the assurance that his sentence would not exceed 20 years of incarceration [R. 123]. Contrary to the defendant's present assertion, the record clearly indicates that Judge Hall never told, advised, or suggested to the defendant that, should he be convicted after a trial, the Court would impose the maximum sentence. 
It is well settled that a trial court acts properly in advising the defendant of the authorized maximum sentence which could be imposed should the defendant be convicted after trial and the actual sentence to be imposed under the plea agreement. See, People v Reels, 17 AD3d 488, 488 [2d Dept 2005]; People v. Allen, 273 AD2d 319, 710 N.Y.S.2d 535 [2d Dept. 2000]; People v. Green, 240 AD2d 513, 658 N.Y.S.2d 133 [2d Dept. 1997]; People v. Jones, 232 AD2d 505, 648 N.Y.S.2d 331 [2d Dept. 1996]. "Advising defendant of the potential maximum sentence, along with an evaluation of the evidence based upon the court file and defendant's acknowledgment of certain facts, did not constitute coercion to induce defendant's guilty plea." People v Morelli, 46 AD3d 1215, 1216 [3d Dept 2007], citing, People v. Lambe, 282 AD2d 776, 777, 722 N.Y.S.2d 437 [2001], Britt v. State of New York, 260 AD2d 6, 12—13, 699 N.Y.S.2d 323 [1999], lv. den., 95 NY2d 753, 711 N.Y.S.2d 155, 733 N.E.2d 227 [2000].
In addition, during his plea allocution, defendant White stated, under oath, that no one had forced, threatened, or made Defendant any other promises, to coerce him to enter a guilty plea [R. 120]; he wanted to enter a guilty plea because there was a lot of evidence against him and he understood that he might get convicted and could be sentenced to 30 years of incarceration and 5 years post release supervision [R.122-23]; and he wanted to avoid the risk of a conviction and sentence after a trial [R.122]. Thus, the defendant's sworn testimony directly contradicts his present and wholly conclusory claims of coercion. 
Based on the foregoing, the defendant's CPL 440 motion to vacate his guilty plea is DENIED. The foregoing constitutes the Decision and Order of this Court.
So ordered on August 30, 2024
ENTER.
Acting County Court Judge

Footnotes

Footnote 1:Attorney Robert E. Kelly passed away on June 29, 2024.